**UNITED STATES of America,**
**Plaintiff–Appellee,**

v.

**Dale Ernest MANTHEY, Defendant–Appellant.**

No. 02–1754.

United States Court of Appeals, Sixth Circuit.

March 17, 2004.

Joan E. Meyer, U.S. Attorney's Office, Grand Rapids, MI, for Plaintiff–Appellee.

Dale Ernest Manthey, Yankton, SC, Kevin M. Schad, Schad & Cook, Indian Springs, OH, for Defendant–Appellant.

Before ROGERS and COOK, Circuit Judges; and COHN, District Judge.*

COOK, Circuit Judge.

Dale Ernest Manthey appeals his conviction for drug and firearms-related offenses, arguing that because an array of errors plagued his proceedings, his convictions should be reversed. Specifically, Manthey contends that the district court violated his rights to a speedy trial and to self-representation, and denied him access to the courts. Manthey also argues that prosecutorial misconduct, an erroneous jury instruction, and insufficient evidence undermine the reliability of the verdict against him. Because we find no reversible error, we affirm the judgment of the district court.

## I

Acting on an informant's tip that Manthey traded drugs and guns through his pawn shop. Michigan police arranged a controlled buy with Manthey exchanging money and three shotguns for marijuana. After monitoring the transaction, the police arrested Manthey and charged him with possession with the intent to distribute marijuana, possession of a firearm in relation to a drug trafficking offense, and dealing in firearms without a license.

At a pretrial conference one week before his trial, Manthey complained to the Magistrate that his attorney had yet to interview fifteen potential witnesses and thus was ill-prepared for trial. Manthey's counsel responded that Manthey never previously mentioned these witnesses. The Magistrate continued the pretrial to allow counsel and Manthey to confer with each other. At the resumed conference two days later, the Magistrate, citing the breakdown in the attorney-client relationship, postponed the trial *sua sponte,* granted an ends-of-justice (EOJ) continuance under 18 U.S.C. § 3161(h)(8)(A), and appointed new counsel. Three weeks later, the Magistrate rescheduled the trial.

Six days before the rescheduled trial date, Manthey moved to dismiss the indictment alleging a Speedy Trial Act violation. The court agreed with Manthey that eighty-eight days had passed since his indictment, exceeding by eighteen days the seventy-day deadline for trial the Speedy Trial Act imposes. But the court refused to dismiss the indictment because ten of the eighteen days were excludable under 18 U.S.C. § 3161(h)(1), as attributable to Manthey's actions, and the Magistrate's EOJ continuance excluded the remaining eight days. Finding no violation of the Speedy Trial Act. the district court denied Manthey's motion to dismiss, permitted the trial to proceed and a jury convicted Manthey of possession with intent to distribute marijuana and dealing in firearms without a license.

---

* The Honorable Avern Cohn, United States District Judge for the Eastern District of Michigan, sitting by designation.

## II

### A. Speedy Trial

On appeal, Manthey challenges the district court's exclusion of the time attributable to the EOJ continuance from the speedy trial calculation. He attacks the propriety of the *sua sponte* continuance, arguing that it lacked foundation and thus could not properly serve to extend the speedy trial deadline. Whether reviewed de novo or for abuse of discretion. *United States v. Cope.* 312 F.3d 757, 776 (6th Cir.2002), we uphold the court's EOJ continuance and exclusion of that time from the speedy trial calculation.

■ Manthey first argues that he did not want his trial delayed. He claims his expressed preference to forgo the appointment of new counsel if it meant a delay of his trial should invalidate the EOJ continuance. Manthey's preference was one of several competing considerations affecting the Magistrate's decision regarding whether "the ends of justice served by [granting a continuance] outweigh the best interest of the public and the defendant in a speedy trial." 18 U.S.C. § 3161(h)(8)(A). Although Manthey claims that he "clearly indicated to the court that if appointing new counsel meant delaying the trial, he did not want new counsel appointed," Appellant's Brief at 9, the transcript of the pretrial shows that the only thing that Manthey "clearly indicated" was that he wanted to be released from jail as soon as possible. He also asked the Magistrate to release him from custody due to his counsel's alleged ineffectiveness. Manthey's complaint regarding his lawyer's incomplete preparation for trial and his insistence that his defense include evidence from the fifteen new witnesses are what prompted the Magistrate to appoint new counsel for him in the first place.

A judge may grant an ends-of-justice continuance if the failure to grant such a continuance "would deny the defendant reasonable time to obtain counsel, would unreasonably deny the defendant ... continuity of counsel, or would deny counsel for the defendant ... the reasonable time necessary for effective preparation...." 18 U.S.C. § 3161(h)(8)(B)(iv). The Magistrate could not reasonably accommodate both Manthey's resistance to trial delay and his insistence that his original counsel was not performing effectively. These conflicting demands justified the court's decision to grant the EOJ continuance here.

As an alternate ground for challenging the EOJ deduction from the speedy trial computation. Manthey argues what amounts to a misreading of 18 U.S.C. § 3161(h)(8)(C), contending that the statutory subsection prohibited the district court from considering defense counsel's trial preparation as a factor in assessing the necessity for the EOJ continuance. That subsection of the Speedy Trial Act, however, forbids granting EOJ continuances due to "lack of diligent preparation ... on the part of the *attorney for the Government.*" 18 U.S.C. § 3161(h)(8)(C) (emphasis added). A *defense* counsel's insufficient preparation may warrant an EOJ continuance. 18 U.S.C. § 3161(h)(8)(B)(i); *United States v. Crane,* 776 F.2d 600, 605 (6th Cir.1985) ("Defense counsel's unpreparedness, even if due to a lack of diligence, could be a valid reason for finding that the failure to grant the continuance would have resulted in a miscarriage of justice.").

Likewise, Manthey misconstrues another subsection of the speedy trial statutes— 18 U.S.C. § 3161(c)(2)—as *limiting* the court's power to allow trial preparation time, presenting yet another basis for including the EOJ-excluded days in the

speedy trial calculation so as to trigger a violation. The subsection instead essentially sets a thirty day *minimum* for trial preparation to protect defendants from being forced to go to trial without *at least* thirty days to prepare. As both the Supreme Court and this court recognize, a district court has discretion under § 3161(h)(8) to grant a continuance for trial preparation if it determines that the ends of justice so require. *See United States v. Rojas–Contreras,* 474 U.S. 231, 236, 106 S.Ct. 555, 88 L.Ed.2d 537 (1985): *United States v. Prince,* 214 F.3d 740, 763 (6th Cir.2000).

Manthey also argues that the Magistrate's reason for granting the EOJ continuance–appointment of new counsel–took just one day and the remaining seven days fall outside of the EOJ continuance. The Magistrate's order, however, entered an open-ended continuance (the sort unnecessary to a mere appointment of counsel) *and* expressly appointed new counsel. We therefore view as meritless Manthey's argument (which *assumes* the appointment took only one day) that the district court and the Magistrate's reasons for the EOJ continuance differed. The district court's reasoning in denying the motion to dismiss matched that of the Magistrate in granting the continuance–appointment of new defense counsel with attendant trial preparation time.

Thus, no Speedy Trial Act violation entitled Manthey to dismissal of the indictment against him.

### B. Sixth Amendment Right to Self–Representation

■ Manthey requested permission to proceed pro se at the end of the pretrial at which he asked the court to immediately release him because of his previous counsel's ineffectiveness. When the court instead appointed new counsel, Manthey, clearly frustrated that the court would not immediately release him from custody, said that he wanted to defend himself so that his trial would not be delayed. He never repeated that request at later pretrials or during trial. We do not assess this single, off-the-cuff remark as the clear and unequivocal request to proceed pro se required by *Faretta v. California,* 422 U.S. 806, 835, 95 S.Ct. 2525, 45 L.Ed.2d 562 (1975). *See, e.g., United States v. Majors,* 328 F.3d 791, 794 (5th Cir.2003) (finding no unequivocal request when defendant asked either for new counsel or permission to make the closing argument himself); *United States v. Frazier–El,* 204 F.3d 553, 559–60 (4th Cir.2000) (finding no clear and unequivocal request where defendant stated "Well, I don't want no counsel then" after the trial court denied his motion for substitute counsel). The district court did not violate Manthey's Sixth Amendment right to self-representation.

### C. Prosecutorial Misconduct

Manthey next contends that his convictions should be overturned due to the prosecutor's misconduct throughout the trial, arguing specifically that the prosecutor impermissibly bolstered the testimony of one of the government's witnesses and vouched for that same witness during closing argument. "[I]mproper vouching involves either blunt comments, or comments that imply that the prosecutor has special knowledge of facts not in front of the jury or of the credibility and truthfulness of witnesses and their testimony.... Bolstering occurs when the prosecutor implies that the witness's testimony is corroborated by evidence known to the government but not known to the jury." *United States v. Francis,* 170 F.3d 546, 550–51 (6th Cir.1999) (internal citations omitted).

Manthey failed to object at trial to these instances of purported misconduct, and this court thus reviews only for plain error. *Johnson v. United States*, 520 U.S. 461, 466–67, 117 S.Ct. 1544, 137 L.Ed.2d 718 (1997). Under the plain error standard, we first determine whether the statements at issue were improper. *United States v. Modena*, 302 F.3d 626, 634 (6th Cir.2002). If so, we then decide whether they were sufficiently flagrant as to warrant reversal of Manthey's convictions. *Id.*

█ Manthey contends that the prosecutor improperly bolstered the testimony of Manthey's son-in-law (Johnson) by referring to a requirement in Johnson's plea agreement that he submit to polygraph examinations upon request. This Circuit allows prosecutors to elicit testimony about the terms of a witness's plea agreement to deflect defense counsel's use of the agreement to attack the witness's credibility. Here, the prosecutor's single, polygraph-related question, limited to deflecting defense counsel's use of the agreement to attack Johnson's credibility, was not improper bolstering. *United States v. Francis*, 170 F.3d 546, 550 (6th Cir.1999).

█ Manthey also argues that the prosecutor improperly vouched for Johnson in summation by stating a personal belief in Johnson's credibility with two statements– *"He was straightforward with you,"* and *"No question about it, he's telling the truth."* J.A. at 241–42 (emphasis added). These statements were unquestionably improper.

In deciding whether the improper statements were sufficiently flagrant as to warrant reversal, we examine: (1) whether the statements tended to mislead the jury or prejudice Manthey; (2) whether the statements were isolated or among a series of improper comments; (3) whether the statements were deliberately or accidentally placed before the jury; and (4) the total strength of the evidence against Manthey. *United States v. Tocco*, 200 F.3d 401, 420–421 (6th Cir.2000) (quotation and citation omitted).

Weighing the *Tocco* factors in light of the strong evidence against Manthey, the prosecutor's isolated remarks did not mislead the jury or prejudice Manthey. Multiple witnesses testified against Manthey (including a government agent) implicating him in the crimes for which he was ultimately convicted. The prosecutorial comments bolstered only Johnson's testimony. Examining the record as a whole, these comments do not warrant reversal.

### D. Sufficiency of the Evidence

Manthey next claims that the government presented insufficient evidence for a jury to convict him of dealing in firearms without a license. Though Manthey unsuccessfully moved for a judgment of acquittal at the close of the government's case, we find no record of the requisite renewal of the motion at the close of all the evidence. Such failure to renew "constitutes a waiver of any objection to the sufficiency of the evidence" with the result that this court "will not reverse absent a miscarriage of justice." *United States v. Nesbitt*, 90 F.3d 164, 167 (6th Cir.1996). "A miscarriage of justice exists only if the record is devoid of evidence pointing to guilt." *United States v. Price*, 134 F.3d 340, 350 (6th Cir.1998) (internal punctuation omitted). This record presents no miscarriage of justice, given the evidence of guilt.

To convict Manthey the jury needed essentially to find him to be an unlicensed gun dealer who "engage[s] in the business" of firearm dealing with a principal objective of livelihood and profit rather than a collector. 18 U.S.C. § 921(a)(21)(C). Manthey must also have known that his

conduct was unlawful. *Bryan v. United States,* 524 U.S. 184, 196, 118 S.Ct. 1939, 141 L.Ed.2d 197 (1998).

◼ Manthey first asserts that because he believed sales outside the shop required no license, the government's proof did not show he "knowingly" violated the statute. The government, however, proved that many transactions took place inside Manthey's store and that Manthey knew that he was violating licensing laws. Manthey justified an unlicensed transaction to an uneasy customer with a story that he was "working with the police," and warned another "Don't forget you didn't get it from here." J.A. at 180, 191. Accordingly, trial evidence supported the jury's guilty verdict.

◼ Manthey next insists that the government offered insufficient evidence to allow a rational juror to conclude Manthey "engaged in the business of" dealing in firearms. Specifically, he argues that because he had two other businesses and derived little profit from the firearms transactions, dealing in firearms was not his livelihood. Testimony shows, however, that he kept the guns on display at the pawnshop with sale tags on them and that the money went into the pawnshop's cash register. While Manthey correctly asserts that the principal objective of the firearms transactions must be livelihood and profit, a defendant need not deal in firearms as his primary business for conviction. *See, e.g., United States v. Masters,* 622 F.2d 83, 88 (4th Cir.1980) (noting that "the Government need not prove that the defendant's primary business was dealing in firearms"); *United States v. Powell,* 513 F.2d 1249, 1250 (8th Cir.1975) ("Likewise, it is clear that dealing in firearms need not be a defendant's primary business...."). Sufficient evidence supports the jury's conclusion that Manthey sold the guns for livelihood and profit.

### E. Pro Se Claims

◼ Manthey, proceeding pro se, raises three additional assignments of error. He first argues that the prosecutor violated his Fifth, Eighth, and Fourteenth Amendment rights by fabricating evidence so that the Magistrate would deny his pretrial release on bond. Manthey's conviction, however, renders his constitutional claims to pretrial bail moot. *Murphy v. Hunt,* 455 U.S. 478, 481, 102 S.Ct. 1181, 71 L.Ed.2d 353 (1982) ("Hunt's claim to pretrial bail was moot once he was convicted").

◼ He next claims that because he had no access to a law library, and because his attorney would not accept collect phone calls, he was denied his due process right of access to the courts. Due process is satisfied, however, if a defendant, like Manthey, has the assistance of an attorney during the course of his criminal trial. *United States v. Smith,* 907 F.2d 42, 44 (6th Cir.1990).

◼ Last, Manthey contends that the district court erroneously instructed the jury to decide a question of law in leaving unspecified the number of firearm sales necessary to be found "engaging in the business" of dealing in firearms. Having raised no objection at trial, we review for plain error the court's instruction to the jury that "The law does not define the number of transactions that are necessary to meet [the definition of engages in the business of dealing firearms], this is for you to decide." J.A. at 231. Rather than posing a question of law, the instruction advised the jury that it was charged with a case-specific inquiry regarding an element of the offense–deciding in this case whether Manthey's sales amounted to engaging in the business of dealing in firearms. Thus the district court did not err in assigning this case-specific inquiry to the

jury and the absence of error ends our plain error analysis.

### III

We affirm the judgment of the district court.