NOT RECOMMENDED FOR PUBLICATION
File Name: 25a0457n.06

Case No. 24-2075

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

|  |  |  |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| Plaintiff-Appellee, | ) | ON APPEAL FROM THE UNITED |
| | ) | STATES DISTRICT COURT FOR |
| v. | ) | THE EASTERN DISTRICT OF |
| | ) | MICHIGAN |
| OMAR SHORTER, JR., | ) | |
| Defendant-Appellant. | ) | OPINION |
| | ) | |

Before: NALBANDIAN, MATHIS, and RITZ, Circuit Judges.

**NALBANDIAN, Circuit Judge.** People in this country can generally sell guns to each other in private sales, but it's against the law to be in the "business" of selling firearms without a license. A jury convicted Omar Shorter of engaging in the business of dealing in firearms without a license under 18 U.S.C. § 922(a)(1)(A) and for making false statements while purchasing firearms under 18 U.S.C. § 922(a)(6). Although he failed to move for acquittal in the district court, Shorter now argues that there was insufficient evidence to convict him under § 922(a)(1)(A). Finding no manifest miscarriage of justice, we AFFIRM the conviction.

**I.**

**A.**

Between July 2020 and December 2022, Omar Shorter bought 39 guns. On many occasions he bought several guns—often duplicates—on the same day. And during this period, Shorter registered only two of the guns and reported one stolen. ATF agents eventually reviewed

this purchase history and were alerted to the possibility that Shorter was an unlicensed gun dealer. After further investigation, they discovered that nine guns purchased by Shorter had been recovered by police in the possession of someone else or at a crime scene.

After learning that Shorter had purchased guns from a particular gun store on December 5 and December 9, 2022, ATF agents visited that store and reviewed its video surveillance. The December 5 footage showed Shorter entering the store and buying a Taurus pistol. ATF agents later learned that Shorter had bought the pistol online on December 1 and picked it up at the store on the 5th. The footage also showed him filling out ATF Form 4473, a form required to complete a gun purchase and, on which, Shorter would've indicated that he was buying the gun for himself.

The December 9 footage showed Shorter entering the store with two other men that ATF agents later identified as Dezjuan and Mandel Berryman, the brothers of Shorter's girlfriend. Shorter and the Berryman brothers browsed the store for a bit, and the footage appeared to show Shorter and Dezjuan on their phones using Cash App, an app used to send and receive money. All three left the store, but Shorter reentered a few minutes later. This time, Shorter purchased another Taurus pistol—the same model he picked up on December 5—and filled out another 4473 form. ATF agents later obtained copies of the 4473 forms from both December purchases, which showed that Shorter wrote down he was buying the guns for himself.

This all led the ATF to execute a search warrant at Shorter's home in January 2023. ATF agents recovered around 40 rounds of ammunition and only two guns. Shorter was present during the search and spoke with the agents. During this interview, Shorter told them that he had purchased around 30 pistols, sold around 28 or 29 of them, and reported one stolen. Shorter also admitted to purchasing two guns for the Berryman brothers in December 2022, stating that he "messed up" when filling out the 4473 forms. R.71, Trial Tr., PageID 878–79.

2

When ATF agents searched Shorter's cell phone, they found his Cash App transaction history and text messages he had sent on December 9 to his girlfriend. The Cash App history showed that on December 1, Mandel Berryman sent Shorter $278. One minute later, Shorter purchased a Taurus pistol online for $277.68; he paid an additional $85 transfer fee when picking it up at the store on December 5. The Cash App history also showed that Dezjuan Berryman sent Shorter $370 on December 9 while they were inside the gun store. Less than thirty minutes later, Shorter purchased the Taurus pistol for $381.59. And the text messages between Shorter and his girlfriend revealed an irate Shorter whose messages could reasonably be read as his expressing frustration that he didn't make any money on the pistols he had bought for Dezjuan and others. For example, Shorter wrote that he "better get paid" because he "was still short" and that "[h]e better . . . hope I don't pop him or even worse." R.71, Trial Tr., PageID 901, 906.

**B.**

A grand jury charged Shorter with two counts of making a false statement during the purchase of a firearm under 18 U.S.C. § 922(a)(6) and one count of engaging in the business of dealing firearms without a license under 18 U.S.C. § 922(a)(1)(A). At trial, in addition to presenting evidence of the facts described above, the government called an ATF agent to offer expert testimony about how Shorter's actions indicated illegal gun trafficking: buying multiple guns in a short period of time, buying duplicates of the same gun, not registering the guns, and the purchased guns later being recovered by police in connection with criminal investigations.

The jury found Shorter guilty of all three counts, and the district court sentenced him to 14 months' imprisonment. At no point did Shorter's counsel move for a judgment of acquittal. He now appeals.

3

**II.**

Shorter argues that the evidence was insufficient for the jury to convict him of being in the business of dealing in guns under 18 U.S.C. § 922(a)(1)(A). Generally, the "standard of review on appeal for an insufficient-evidence challenge is 'whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'" *United States v. Kennedy*, 714 F.3d 951, 957 (6th Cir. 2013) (quoting *Jackson v. Virginia*, 443 U.S. 307, 319 (1979)). When applying this standard of review, "[w]e may not 'weigh the evidence presented, consider the credibility of witnesses, or substitute our judgment for that of the jury.'" *United States v. Graham*, 622 F.3d 445, 448 (6th Cir. 2010) (quoting *United States v. M/G Transp. Servs., Inc.*, 173 F.3d 584, 588–89 (6th Cir. 1999)). And circumstantial evidence alone can be enough to sustain a conviction. *Id.* With all that in mind, Shorter would "bear[] a very heavy burden" under this standard. *Id.*

But here, Shorter's burden is even heavier because he never made a motion for a judgment of acquittal under Federal Rule of Criminal Procedure 29. "If a defendant fails to make the requisite Rule 29 motions, our review is 'limited to determining whether there was a manifest miscarriage of justice.'"[1] *United States v. Jordan*, 544 F.3d 656, 670 (6th Cir. 2008) (quoting *United States v. Price*, 134 F.3d 340, 350 (6th Cir. 1998)); *see also Kennedy*, 714 F.3d at 957. Such "miscarriage of justice exists only if the record is devoid of evidence pointing to guilt." *Jordan*, 544 F.3d at 670 (citation omitted). So for this Court to order acquittal, we must conclude

---

[1] The "manifest miscarriage of justice" standard applies when the defendant made a Rule 29 motion at the close of the government's case-in-chief but failed to renew it at the close of all the evidence. And it also applies when the defendant failed to make a Rule 29 motion at both the close of the government's case-in-chief and the close of all the evidence, as is the case here. *Jordan*, 544 F.3d at 670 n.10.

that the government's case to the jury was devoid of evidence pointing to Shorter's guilt under § 922(a)(1)(A).

**III.**

18 U.S.C. § 922(a)(1)(A) makes it unlawful for any person who is not a licensed dealer "to engage in the business of . . . dealing in firearms." To convict Shorter, the government had to prove beyond a reasonable doubt that the defendant (1) engaged in the business of dealing in firearms; (2) wasn't a licensed firearms dealer; and (3) knew that his conduct was unlawful. *United States v. Manthey*, 92 F. App'x 291, 296–97 (6th Cir. 2004) (citing *Bryan v. United States*, 524 U.S. 184, 196 (1998)); *United States v. Tyson*, 653 F.3d 192, 200 (3d Cir. 2011).

Shorter's appeal is based only on the first element. He argues that his conviction should be vacated because the government didn't present sufficient evidence to prove he was "engaged in the business of dealing in firearms."[2] The statute defines "engaged in the business" as:

> [A] person who devotes time, attention, and labor to dealing in firearms as a regular course of trade or business *to predominantly earn a profit* through the repetitive purchase and resale of firearms, but such term shall not include a person who makes occasional sales, exchanges, or purchases of firearms for the enhancement of a personal collection or for a hobby, or who sells all or part of his personal collection of firearms.

---

[2] The original version of § 922(a)(1)(A) didn't define "engaged in the business." Gun Control Act of 1968, Pub. L. No. 90-351, § 921, 82 Stat. 197, 228. But in 1986, after a circuit split developed regarding whether the conviction under the statute required a profit motive, Congress modified the statute to define "engaged in the business." Pub. L. No. 99-308, § 101, 100 Stat. 449, 450 (1986); *see United States v. Graham*, 305 F.3d 1094, 1101 n.4 (10th Cir. 2002). Congress made its final modification to the definition in 2022. Bipartisan Safer Communities Act, Pub. L. No. 117-159, § 12002, 136 Stat. 1313, 1324–25 (2022). And in 2024, the ATF promulgated regulations further detailing what "engaged in the business" and "to predominantly earn a profit" mean. 27 C.F.R. § 478.13.

18 U.S.C. § 921(a)(21)(C) (emphasis added).[3]  And the statute defines "to predominantly earn a

profit" to mean:

> [T]hat the intent underlying the sale or disposition of firearms is predominantly one
> of obtaining pecuniary gain, as opposed to other intents, such as improving or
> liquidating a personal firearms collection: *Provided*, That proof of profit shall not
> be required as to a person who engages in the regular and repetitive purchase and
> disposition of firearms for criminal purposes or terrorism.

18 U.S.C. § 921(a)(22).

From its plain language, the statute doesn't prohibit all unlicensed sales of firearms.

Instead, to violate the statute, the defendant must devote "time, attention, and labor" to repeatedly

purchasing and reselling firearms as opposed to doing so occasionally.  18 U.S.C. § 921(a)(21)(C).

And the statute mandates that the defendant's predominant intent while purchasing and selling the

firearms is to earn a profit as opposed to, for instance, pursuing a hobby or getting rid of a personal

collection.  As the Third Circuit put it, criminal liability is imposed when profit is the predominant

purpose and repetitiveness is the modus operandi.  *Tyson*, 653 F.3d at 200–01.

---

[3]  As of 2022, the applicable definition depends on whether the defendant is charged with
selling firearms (§ 921(a)(21)(C) applies) or repairing and retrofitting firearms (§ 921(a)(21)(D)
applies).  *See* 18 U.S.C. § 921(a)(11); § 921(a)(21)(C)–(D).  The government alleged that Shorter
was engaged in the business of selling firearms, so § 921(a)(21)(C) applies here.  But at trial, the
district court instructed the jury on the § 921(a)(21)(D) definition.  Shorter's counsel didn't object
to the instructions, nor does Shorter challenge the instructions on appeal.  And in fact, both parties'
initial briefs based their arguments on the wrong definition—it wasn't until Shorter's reply brief
that the mistake was identified.  In any event, even if Shorter had challenged the jury instructions
on appeal, we would've reviewed the challenge for plain error only.  *See United States v. Aaron*,
590 F.3d 405, 408 (6th Cir. 2009).  And Shorter concedes that the two definitions are "materially
identical[]."  Appellant's Reply Br. at 6.  So there wouldn't have been grounds for us to vacate his
conviction anyway.

**IV.**

In his insufficient-evidence claim, Shorter doesn't challenge the repetitiveness of his purchases and sales, nor does he claim that proof of financial gain is required to convict. Instead, he argues that the government didn't prove a profit motive because Shorter lost money on the gun sales to the Berryman brothers and those were the only sales the government had specific details about. For Shorter to prevail, however, we must find that the record is devoid of evidence, whether direct or circumstantial, supporting the government's charge that he sought "to predominantly earn a profit" under the meaning of 18 U.S.C. § 921(a)(21)(C). And because Shorter concedes the point, we don't need to resolve whether proof of actual profit is necessary to convict.

To recap some of the evidence: The government presented the jury with Shorter's firearm purchase history of 39 guns (often of duplicates) and the fact that when his house was searched only two guns were there. The government also presented Shorter's admission that he sold around 28 or 29 of the guns he purchased—he wasn't giving them away. The government presented text messages showing Shorter's frustration with not having made a profit in recent sales. And the government's expert witness testified that Shorter's purchase history, his consistent failure to register the guns he purchased, the high number of guns he purchased later recovered by police during unrelated criminal investigations, and the short period between the purchases and subsequent recoveries indicated firearms trafficking.

This is all circumstantial evidence that Shorter had the predominant intent of earning a profit through the repetitive purchasing and selling of guns. Though Shorter urged the jury at trial to see him as a gun collector or hobbyist rather than a profiteer, the jury was free to reject that theory. And the government didn't need to present evidence disproving every possible avenue of innocence. *United States v. Sadler*, 24 F.4th 515, 539 (6th Cir. 2022). Circumstantial evidence

alone is enough to sustain a conviction. *Id.* So we don't find a manifest miscarriage of justice in Shorter's conviction.

Shorter points to two cases, *Kish* and *Dettra*, to argue that the evidence presented at his trial was insufficient because the evidence in those cases was much stronger. *United States v. Kish*, 424 F. App'x 398 (6th Cir. 2011); *United States v. Dettra*, No. 99-3667, 2000 WL 1872046 (6th Cir. Dec. 15, 2000). In *Dettra*, for example, the defendant sold hundreds of guns with an annual revenue of around $40,000. 2000 WL 1872046, at *1. But those cases don't set the minimum threshold for evidence required to convict under 18 U.S.C. § 922(a)(1)(A). *See, e.g.*, *United States v. Gray*, 470 F. App'x 468, 472–73 (6th Cir. 2012) (finding that even if some past cases "involve significantly more gun sales" than the case at hand, "they do not foreclose the possibility of conviction on a smaller number of guns"). That the evidence in those cases was stronger than the evidence against Shorter doesn't demonstrate that the government's evidence was insufficient here.

Shorter also cautions us not to conflate guilt under 18 U.S.C. § 922(a)(6) with guilt under 18 U.S.C. § 922(a)(1)(A). He portrays the government's evidence as showing only that he bought guns for other people and lied about it on the 4473 forms, which is what landed him in trouble under § 922(a)(6). But even though it's true that not all straw purchasers are firearms dealers, his argument ignores the reasonable inferences a jury could make based on the evidence surrounding the transactions with the Berryman brothers. The government presented substantial evidence indicating that Shorter was repetitively selling guns (he admitted to it) and the circumstantial evidence allowed the jury to reasonably infer that Shorter intended to make a profit from the many sales he completed before December 2022. Though the government's case didn't include evidence detailing the sales before December 2022 (such as financial records) or other evidence of business-

8

like activities (such as advertising or having a physical store), the record isn't devoid of evidence pointing to Shorter's guilt under 18 U.S.C. § 922(a)(1)(A).

**V.**

For these reasons, we AFFIRM Shorter's conviction.