**UNITED STATES of America,
Plaintiff–Appellee,**

v.

**Jose SALCIDO, Defendant–Appellant.**

No. 99–2162.

United States Court of Appeals,
Sixth Circuit.

Jan. 17, 2002.

---

Before KEITH, KENNEDY, and BATCHELDER, Circuit Judges.

**218**

BATCHELDER, Circuit Judge.

Defendant–Appellant Jose Salcido ("Salcido") appeals his conviction and sentence for trafficking in marijuana. Salcido claims that he was denied his Sixth Amendment right to counsel because his attorney allegedly labored under a conflict of interest. Salcido also claims that both the incarceration and supervised release portions of his sentence violate the rule established in *Apprendi v. New Jersey*, 530 U.S. 466, 490, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000). Finding no Sixth Amendment violation, we will affirm the judgment of conviction and sentence of incarceration. We will vacate Salcido's sentence of supervised release and remand for re-sentencing for the reasons explained hereinafter.

**BACKGROUND**

The State of Michigan brought drug charges against Salcido and Garcia Suazo for trafficking in marijuana. Attorney Sam Simon appeared at a preliminary hearing in state court on behalf of both Suazo and Salcido. Michigan dropped its charges against the two when the federal government filed a criminal complaint against them for violating federal drug laws. Suazo and Salcido then appeared before a federal magistrate judge on a habeas writ to deliver them from state custody to federal custody. Sam Simon appeared for both defendants at this first encounter with the federal courts, but advised the magistrate judge that limited discovery he had already obtained led him to believe that Suazo would need separate counsel. Simon told the magistrate that Suazo would be retaining Caleb Simon as his counsel. Caleb is Sam's brother, but the two do not practice together or even in the same firm, although they do have their offices in the same building. The magistrate judge questioned Suazo and Suazo affirmed his understanding of his right to have separate representation, his right to retain counsel of his choice and his right to appointed counsel. Caleb appeared for Suazo at all subsequent federal hearings and proceedings, but Sam never filed a notice that he had withdrawn from representing Suazo.

The Government issued a three-count indictment against Suazo and Salcido. Count One charged that from March 14 through March 17, 1999, the defendants conspired to possess with intent to distribute and to distribute marijuana, in violation of 21 U.S.C. § 841(a)(1) and § 846. Count Two charged the defendants with distributing marijuana on March 16, 1999, in violation of 21 U.S.C. § 841(a)(1); Count Three charged the defendants with distributing marijuana on March 17, 1999, in violation of 21 U.S.C. § 841(a)(1) and § 841(b)(1)(A). None of the counts specified any quantity of marijuana.

Suazo pled guilty to Count One of the indictment and the Government dismissed Counts Two and Three. Salcido went to trial. At trial, Salcido called Suazo as his witness. Suazo did his best to exculpate Salcido by testifying that someone else—whose name he could not recall—was involved in the drug trafficking rather than Salcido. Suazo denied that Salcido had participated in or received any money from any of the marijuana transactions. Suazo did, however, admit that Salcido had been present and had acted as an interpreter during the March 16th sale of one-pound of marijuana to undercover officers in Detroit and on March 17th had given Suazo a ride to Flint, where the sale of 120 pounds of marijuana took place. Salcido denied this, and it is this testimony by Suazo that Salcido now says his lawyer Sam Simon did not attack because Sam Simon may have labored under some conflict of interest.

After hearing the testimony of numerous other witnesses, including the undercover officers, the government's cooperating witness and Salcido himself, the jury convicted Salcido on Counts One and Three and acquitted him on Count Two. The jury was not instructed and made no findings regarding quantity of marijuana as to either count. At sentencing, the trial judge determined that Salcido was responsible for 420 pounds of marijuana (120 pounds actually delivered to undercover officers in Flint on March 17th and 300 pounds promised for later delivery), resulting in a base offense level of 26. Salcido raised no objection either to the judge's determining the quantity of marijuana for which Salcido was responsible or to the quantity itself. The judge added two levels because he found that Salcido had committed perjury in his trial testimony. Salcido had no criminal history, and his offense level of 28 resulted in a sentencing range of 78 to 97 months.

The judge sentenced Salcido to concurrent terms of 78 months on Count One and 78 months on Count Three. The judge also sentenced Salcido to one four-year term of supervised release and one three-year term of supervised release. The terms run concurrently.

# I

 Criminal defendants enjoy a Sixth Amendment right to conflict-free representation by their counsel. *See Smith v. Anderson,* 689 F.2d 59, 62–63 (6th Cir.1982) (affirming grant of habeas writ because trial counsel labored under conflict). In order to establish a violation of this right, a defendant must show: (1) that an actual conflict exits, and (2) that the actual conflict adversely affected his law-

yer's performance. *United States v. Frederick,* 1985 WL 13474, at \*5 (6th Cir. July 3, 1985) (citations and quotations omitted). The adverse effect, however, need not rise to the level of actual prejudice to the defendant. *See Cuyler v. Sullivan,* 446 U.S. 335, 349–50, 100 S.Ct. 1708, 64 L.Ed.2d 333 (1980) ("Thus, a defendant who shows that a conflict of interest actually affected the adequacy of his representation need not demonstrate prejudice in order to obtain relief.").

 To establish an actual conflict, the defendant must point to specific instances in the record that suggest an actual conflict or impairment of his interests. *United States. v. Mays,* 77 F.3d 906, 908 (6th Cir.1996).[1] The petitioner must show that the attorney made a choice between possible alternative courses of action and chose the one that benefitted one client at the expense of the other. *United States v. Hall,* 200 F.3d 962, 966 (6th Cir.2000) ("Appellants must make a factual showing of inconsistent interests and must demonstrate that the attorney 'made a choice between possible alternative courses of action, such as eliciting (or failing to elicit) evidence helpful to one client but harmful to the other.'" (internal citations and quotations omitted)). If the conflict is as to a matter that is irrelevant or the conflict is merely hypothetical, there is no constitutional violation. *Id.; see also Kirby v. Dutton,* 831 F.2d 1280, 1282 (6th Cir.1987) (stating that an actual conflict is established where a plausible defense is foreclosed or where the joint defendants' interest diverged with respect to a material factual or legal issue or course of action). If, however, a defendant cannot show that counsel has an actual conflict, his claim of constitutionally ineffective counsel must

---

**1.** *See also Cuyler,* 446 U.S. at 350 ("But until a defendant shows that his counsel actively represented conflicting interests, he has not established the constitutional predicate for his

claim of ineffective assistance .... We hold that the possibility of conflict is insufficient to impugn a criminal conviction.").

rest on his making the *Strickland* [2] showing that counsel's performance was deficient and that the deficiency prejudiced the defendant. *See Draper v. Adams,* 2000 WL 712376, at *7 (6th Cir. May 23, 2000).

■ Rule 44(c) of the Federal Rules of Criminal Procedure requires that where two defendants have been jointly charged, the district court shall "promptly inquire . . . and shall personally advise each defendant of the right to the effective assistance of counsel[.]" FED. R. CRIM. P. 44(c). But this rule, if broken, does not ineluctably mandate that a conviction be reversed. The rule's advisory notes provide that "[t]he failure in a particular case to conduct a rule 44(c) inquiry would not, standing alone, necessitate the reversal of a conviction of a jointly represented defendant." FED. R. CRIM. P. 44(c) advisory committee's note (1979 Amendment).

■ Salcido says that his lawyer, Sam Simon, labored under an actual conflict of interest because he had represented both Suazo and Salcido in the preliminary proceedings; because the lawyer whom Suazo subsequently retained was Sam's brother Caleb, who practiced law down the hall from Sam; because—out of concern for Suazo—Sam "may have" failed to pursue pretrial plea negotiations on Salcido's behalf, including an opportunity for Salcido to testify for the prosecution; and because—again out of concern for Suazo—Sam Simon did a poor job of examining his former client. Salcido contends that the conflict should have been apparent to the trial judge; the trial judge should have advised him of the problem as required by Rule 44(c); and the failure of the judge to advise him warrants an automatic reversal of his conviction.

Salcido cites no record evidence to suggest that Sam Simon's early and abbreviated representation of Suazo caused any actual conflict, and the fact of dual representation is not enough to show a constitutional violation. *See Holloway v. Arkansas,* 435 U.S. 475, 482, 98 S.Ct. 1173, 55 L.Ed.2d 426 (1978) ("Requiring or permitting a single attorney to represent codefendants . . . is not *per se* violative of constitutional guarantees of effective assistance of counsel."). Nor does he cite any record evidence to show that Sam Simon somehow failed to represent him adequately because of the purported conflict. Nor does he cite to any authority in support of his apparent claim that when lawyers who are related to each other but who do not practice together represent co-defendants, Rule 44(c) is triggered.

Attempting to point to some incident in the record that would show a conflict, Salcido assails Sam Simon's examination of Suazo, claiming that Suazo's testimony undermined Salcido's claim of ignorance that Suazo was dealing marijuana, and but for Sam's prior representation of Suazo, he would have attacked Suazo's testimony. But Salcido's characterization of the testimony elicited from Suazo is at best disingenuous. The trial transcript demonstrates clearly that Sam called Suazo for the purpose of eliciting Suazo's story that someone other than Salcido had been involved in the marijuana trafficking with him, and Suazo did his best to convince the jury of this. The evidence from other witnesses clearly placed Salcido at the scene of the March 16th transaction, and Suazo provided what the jury apparently thought was enough of an innocent explanation for his presence to create reasonable doubt as to Count Two. The testimony of those witnesses that Salcido was actively involved in the conspiracy and the March 17th transaction simply was too strong to create reasonable doubt as to

**2.** *Strickland v. Washington,* 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984).

those counts. There is no evidence whatever that Sam Simon failed to pursue a line of defense because he was protecting Suazo.

Salcido has wholly failed to demonstrate that Sam Simon had an actual conflict of interest. He therefore cannot show that any conflict of interest adversely affected Sam Simon's performance as his counsel. Salcido does not not claim that his lawyer provided constitutionally ineffective assistance in any other respect. We therefore hold that his assignment of error is without merit.

## II

■ Salcido complains that his sentence of imprisonment violates the rule announced in *Apprendi v. New Jersey*, 530 U.S. 466, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000). We review *Apprendi*-based objections for plain error where, as here, the defendant made no such objection before the trial court, even where the defendant was sentenced before *Apprendi* was decided. *See United States v. Page*, 232 F.3d 536, 543 (6th Cir.2000). Error is not plain unless that error is " 'clear' under current law and affects substantial rights." *Id.* (quoting *Johnson v. United States*, 520 U.S. 461, 466–67, 117 S.Ct. 1544, 137 L.Ed.2d 718 (1997)). For purposes of plain-error review, current law is law as it exists when the appeal is decided. *See id.* at 544. We may notice a forfeited *Apprendi* error only where that error "seriously affect[s] the fairness, integrity, or public reputation of judicial proceedings." *Id.* (quoting *Johnson*, 520 U.S. at 466).

■ There is no question that the principles set out in *Apprendi* apply here. The indictment does not specify any quantity of marijuana and the jury made no findings as to quantity; rather, the sentencing judge determined that Salcido was responsible for 420 pounds of marijuana. Hence, because the jury did not find be-

yond a reasonable doubt that Salcido was responsible for trafficking in 420 pounds of marijuana, the sentence on each count must be for a quantity not exceeding that of the lowest penalty section in the statute, namely, not more than 50 kilograms for which a maximum sentence of five years' imprisonment may be imposed under 21 U.S.C. § 841(b)(1)(D). *See id.* at 543.

Like at least one of the defendants in *Page*, Salcido was convicted of conspiracy as well as a substantive drug trafficking count. In Salcido's case, each of those counts carries a statutory maximum of five years. As we reasoned in *Page*, the sentences for these counts would no longer run concurrently, but instead would run consecutively to reach the Guidelines' recommended range. *See id.* at 544–45 (citing U.S.S.G. §§ 5G1.2(d), 3D1.2 & 3D1.3). Moreover, at oral argument, Salcido's counsel conceded that *Page* controls the sentence of imprisonment. Thus, we will not exercise our discretion as to Salcido's *Apprendi* argument as it relates to his prison sentence because he can show neither prejudice to himself nor deleterious effect upon the integrity of the district court proceedings as a result of this error in sentencing. The supervised release portion of Salcido's sentence, however, is another matter.

■ While the Sentencing Guidelines permit the imposition of consecutive sentences of imprisonment, they do not permit consecutive terms of supervised release. *See* U.S.S.G. § 5G1.2 (commentary) ("Note, however, that even in the case of a consecutive term of imprisonment imposed under subsection (a), any term of supervised release imposed is to run concurrently with any other term of supervised release imposed.") (citing 18 U.S.C. § 3624(e)). The district court sentenced Salcido to one four-year term and one three-year term of supervised release. Salcido says that the four-year term of

supervised release was plain error because his offenses were Class D felonies and federal law permits no more than three-years' supervised release for conviction on a Class D felony. Salcido is correct. *See* 18 U.S.C. §§ 3559(a) and 3583(b)(2).

Because consecutive terms of supervised release are not permitted, the district court was limited to sentencing Salcido to two concurrent three-year terms of supervised release. The four-year supervised release term is therefore plain error that clearly prejudices Salcido. Accordingly, we vacate the sentence of supervised release.

For the reasons stated above, we AFFIRM the judgment of conviction and sentence of incarceration. We VACATE the sentence of supervised release and remand for re-sentencing consistent with this opinion.