**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**
File Name: 08a0782n.06
Filed: December 23, 2008

**05-4170**

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff-Appellee, | ) | |
| | ) | |
| v. | ) | ON APPEAL FROM THE UNITED |
| | ) | STATES DISTRICT COURT FOR THE |
| DEWAYNE ANTHONY JACKSON, | ) | SOUTHERN DISTRICT OF OHIO |
| | ) | |
| Defendant-Appellant. | ) | |

Before: DAUGHTREY, GILMAN, and ALARCÓN,[*] Circuit Judges.

**PER CURIAM.** The defendant, Dewayne Jackson, appeals his convictions that resulted from a 22-count indictment charging him under the Hobbs Act, 18 U.S.C. § 1951, with committing a series of five armed robberies, conspiracy to violate the Hobbs Act, and illegal possession of a firearm. He claims that the district court committed error under *Faretta v. California*, 422 U.S. 806 (1975), by "ignoring [Jackson's] unequivocal demand to represent himself," that the court permitted the prosecution to introduce evidence and expert testimony in violation of Federal Rule of Criminal Procedure 16, and that the government failed to prove that the firearm attributed to Jackson had been shipped in interstate commerce. Because we find that Jackson's comment concerning *pro se*

---

[*]The Hon. Arthur L. Alarcón, Judge of the United States Court of Appeals for the Ninth Circuit, sitting by designation.

representation was essentially an expression of dissatisfaction with his then attorney and not an "unequivocal demand" sufficient to require a *Faretta* hearing or to establish the right of self-representation, we find no merit to this claim. Moreover, we conclude that the district court did not abuse its discretion in the admission of the evidence at issue on appeal and that there was sufficient proof that the firearm in question had moved in interstate commerce. We therefore affirm the district court's judgment in all respects.

## FACTUAL AND PROCEDURAL BACKGROUND

Dewayne Jackson was one of five co-defendants originally charged in a 22-count indictment with conspiracy to violate the Hobbs Act, ten counts of armed robbery, and multiple firearms violations. Jackson went to trial on a second superceding indictment and was convicted of participating in the conspiracy and committing five armed robberies. He was also found guilty on five counts of use of a firearm in the commission of an offense and one count of being a felon in possession of a firearm. The specific details of the offenses are not relevant to this appeal. What is relevant concerns the district court's effort to supply Jackson with representation and the court's ruling on two defense objections to evidence introduced at trial.

Jackson's retained attorney, Gary Tyack, appeared on his behalf at a detention hearing and filed pretrial motions to suppress items seized from a vehicle and during the search of a residence, as well as pretrial identifications of Jackson made from a photo array shown to some of the robbery victims. At arraignment on the first superceding

indictment, Tyack asked to withdraw from the case and was replaced by Kerry Donahue, who was appointed by the district court to represent the defendant. However, at the subsequent arraignment on the second superceding indictment, Jackson indicated that he was dissatisfied with his new counsel, claiming "a trust issue, a communication issue, and . . . a lack of interest on [Donahue's] part" in Jackson's case. The transcript of the proceeding indicates a high level of frustration on the defendant's part, apparently stemming from Donahue's failure to visit him in the lock-up facility where he was detained, give him the latest version of the indictment, supply copies of the police report in addition to the "13 pages of discovery" that Jackson already had in his possession, and conduct an investigation to determine "[w]ho is writing these charges? . . . Is there any witnesses to it? Can I question somebody?" Responding to the district judge's attempt to put his questions in context, Jackson said, "I don't want [Donahue] to represent me. I want to represent myself."

At this point, the district judge informed Jackson that he would address that issue after holding a hearing, presumably a *Faretta* hearing to determine whether the defendant was capable of defending himself and willing to waive his right to representation. That hearing was never held, however, undoubtedly because following the arraignment, the district court entered an order permitting Donahue to withdraw from the case and further providing:

> At the arraignment, defendant made a request for the appointment of new counsel. When that request was not immediately granted, the defendant

>indicated that if new counsel were not appointed, he would then seek to represent himself. The record reflects that [Kerry Donahue] has been competently representing the defendant, and [although] the court has no reason to believe that his performance in this case has been inadequate in any way . . . [i]n the interests of the effective administration of justice, the defendant's request for new counsel is hereby granted.

Within five days after Jackson's arraignment on the second superceding indictment, the court appointed Charles McKinney to represent the defendant. If Jackson had any difficulty with or opposition to his new counsel, there is nothing in the record to indicate it, either prior to the trial a little over three months later, during the five-day trial, or in post-trial proceedings.

The defendant did object on the first day of trial to the government's failure to produce in timely fashion certain cellular telephone call records, as well as a copy of a CD containing recordings of telephone calls that Jackson had made from a pay phone in the county jail where he was being held, claiming a discovery violation under Rule 16. The government explained that despite the timely issuance of a subpoena to Cingular, copies of the records were not received by the government until a few days before trial and were turned over to the defense the same day that they were received. The CD containing the defendant's recorded conversations on the jail telephone was made as part of an investigation concerning a plot hatched by Jackson to escape from custody while being transferred to or from the lock-up facility. While going over the lengthy recorded conversations, FBI agents discovered that Jackson had made self-incriminating statements concerning the charges in this case and turned the CD over to government prosecutors.

It was not supplied to the defense for security reasons, but the prosecutor assured the court that there had been an automatic warning at the beginning of every telephone call made from the jail that the calls were being recorded. The prosecutor also informed the court that Rule 16 was not implicated because he planned to use the recorded conversations only as necessary for rebuttal and not as part of the government's case-in-chief. As it turned out, the recorded conversations were never played at trial or admitted into evidence; instead, the government used them to refresh Amy Crevison's memory and to impeach her on cross-examination. Moreover, the prosecutor indicated that of the voluminous cellular records, the only two calls that would be introduced were made among three of the co-defendants and, therefore, it did not appear that they would be prejudicial to defendant Jackson, if in fact they were introduced. Indeed, the record on appeal fails to show that the calls were introduced for any purpose during the trial.

The other evidentiary matter now raised by the defendant concerns the testimony of ATF agent David Taylor that the Smith & Wesson .357 revolver discovered in Jackson's possession was manufactured in Springfield, Massachusetts, and, therefore, that it had traveled in interstate commerce. When the prosecutor inquired about the agent's training and expertise as a firearms examiner, the defendant objected to the witness being called to testify as an expert witness on firearms, because the government had not given the defense prior notice that the witness would be called. In response, the prosecutor explained that Agent Taylor was familiar with .357 revolvers, had inspected the weapon in question earlier that day, had located the stamping on it that indicated its origin, and would

be testifying based on personal knowledge, rather than offering an expert opinion. The district court ruled that the testimony was admissible.

At the conclusion of the trial, Jackson was convicted on all 12 counts of the indictment specifically returned against him and was given an effective sentence of 120 years.

## DISCUSSION

The two issues raised on appeal that challenge evidentiary rulings by the district court do not require detailed discussion. The district court's decisions are, of course, subject to review only for an abuse of discretion. See United States v. Tocco, 200 F.3d 401, 414 (6th Cir. 2000). As noted above, the record fails to show that the cellular records were ever introduced against defendant Jackson at trial. Moreover, only one of the recorded conversations was used by the government – to refresh the memory of Amy Crevison, the person to whom Jackson made the call – and it was played while the jury was out of the courtroom and the content disclosed only for use as impeachment. Furthermore, Jackson's attorney was given an opportunity to listen to the recordings, even though his motion for a continuance was not granted. We conclude that there was no abuse of discretion in connection with the rulings on any of the related Rule 16 discovery motions.

As for the testimony of Agent Taylor, we likewise find no abuse of discretion. He testified only on the basis of personal knowledge, not his opinion – expert or otherwise – and thus the objection to the lack of prior notice that he would be called as an expert witness is without merit. The defendant nevertheless argues on appeal that it was error to permit him to testify on the basis of personal knowledge that the weapon had moved in interstate commerce based on its manufacture in Springfield, Massachusetts, because "he certainly was not present when the gun was manufactured." We consider this argument frivolous, given the fact that the revolver was stamped with the location of its origin, Springfield, Massachusetts, and there was no evidence to the contrary.

The remaining question on appeal concerns the defendant's insistence that he was deprived of his right, derived from the Sixth Amendment, to represent himself at trial, having informed the district judge at arraignment, "I am my own counsel." Rather than engage in a Faretta inquiry at that time, with several other co-defendants also awaiting arraignment and the district judge's scheduling order still to be announced, the judge indicated that there would be a hearing at a later date to determine whether Jackson could conduct his own defense. The district court apparently divined, as have we, that the defendant was motivated less by a desire to engage in self-representation and more by extreme dissatisfaction with Kerry Donahue personally – saying at one point, "I don't want to go to court with him" – and that, if asked, his actual preference would probably have been to have new counsel appointed, an action that the district judge took almost immediately.

- 7 -

Perhaps, in light of Jackson's statements to the court proposing self-representation, it would have been preferable to hold a full-blown hearing, which was apparently the district court's initial intent. But, as we have held, "Faretta procedures are only required when a defendant has clearly and unequivocally asserted his right to proceed pro se." United States v. Cromer, 389 F.3d 662, 682 (6th Cir. 2004). Here, Jackson's statements may have been "clear" but, when viewed in context, they were not altogether "unequivocal." Relevant to Jackson's situation, we have also observed: "It is hornbook law that '[w]hen an indigent defendant makes a timely and good faith motion requesting that appointed counsel be discharged and new counsel appointed, the trial court clearly has a responsibility to determine the reasons for defendant's dissatisfaction with his current counsel'." United States v. Iles, 906 F.2d 1122, 1130 (6th Cir. 1990) (citation omitted). In this case, even though a Faretta hearing never occurred, the district court did, in fact, inquire into the defendant's reasons for wishing to discharge his then attorney and then replaced Donahue at virtually the first opportunity. In response to the district judge's action, Jackson made no further protestation, nor did he give any indication that he wished to proceed pro se – not at the suppression hearing that followed arraignment nor at trial. It is difficult, therefore, to conclude that Jackson "clearly and unequivocally asserted his right to proceed pro se."

Based on the facts in this record, we conclude that the post-arraignment acquiescence of the defendant in representation by his newly appointed attorney amounted to a waiver by conduct of the right to self-representation. It would certainly be

- 8 -

unreasonable now to hold that the district court abused its discretion in failing to hold a *sua sponte Faretta* hearing once Donahue had been replaced by new counsel and there was no further objection from Jackson.  Moreover, the factual circumstances distinguish this case both from that of *United States v. Bowker*, 372 F.3d 365 (6th Cir.), *vac'd on other grounds*, 543 U.S. 1182 (2004), relied upon by the defendant, and from our recent opinion in *Moore v. Haviland*, 531 F.3d 393 (6th Cir. 2008).

In the former case, defendant Bowker – then represented by counsel – sent the district judge a hand-written motion "for release of appointed attorney."  *Bowker*, 372 F.3d at 385. In that motion, Bowker stated: "Now Comes Defendant, being first advised of his rights to an attorney, and does now knowingly, willingly, and intelligently waive his rights, to court-appointed counsel." *Id.* at 385-86.  The district court apparently misconstrued the request for self-representation and entered an order denying "Defendant's pro se motion for new counsel." *Id.* at 386.  Apparently, Bowker later had what the opinion describes as "a change of heart" and sent the court another written request, this time asking that his appointed lawyer be permitted to withdraw from the case "and that a new lawyer be appointed to represent" him.  *Id.*  The district court did, in fact, appoint new counsel for Bowker, who nevertheless appealed his conviction on the basis of the district court's purported denial of his right to self-representation.  Affirming the conviction, we emphasized the need to make the appropriate inquiries when a defendant "knowingly and intelligently" waives his right to counsel and makes "a clear and unequivocal assertion of

the right to self-representation." *Id.* But, we ultimately held that the district court's error in failing to do so in Bowker's case was rendered harmless by his later request for the appointment of new counsel. *Id.* If, in Jackson's case, there was a similar misinterpretation of the defendant's original request to proceed *pro se,* there was also a similar "change of heart" and an implied waiver of the right of self-representation, as demonstrated by Jackson's acceptance of newly appointed counsel.

*Moore* is a habeas case that was filed in federal court, pursuant to 28 U.S.C. § 2254, following the petitioner's conviction in state court. The facts in *Moore* are easily distinguished from those in this case. In the state trial court, defendant Moore asserted his desire to represent himself forcefully and continuously, both in open court and by written motion. He was not only deprived of anything resembling a *Faretta* inquiry, but was affirmatively discouraged in the assertion of his right to self-representation by the trial judge, who responded to his request by saying: "[Y]ou can go pro se and be your own attorney, which is of course a very dubious action for anybody to take, and I personally, in 28 years as an officer of the court, have never seen anybody successful in that regard." *Moore*, 531 F.3d at 396. Moore's request to act as his own lawyer was denied and, unlike Bowker and Jackson, he did not manifest, in writing or by his conduct, any acquiescence in proceeding to trial while still represented by his original, repudiated counsel. We held that Moore had been wrongfully denied his right to self-representation, or at the very least a *Faretta* hearing, and affirmed the district court's grant of a conditional writ of habeas corpus. Because the context of the request in *Moore* differs so substantially from the

circumstances in the case before us, we decline to apply the same analysis or to reach the

same result here.

## CONCLUSION

For the reasons set out above, we AFFIRM the judgment of the district court.[1]

---

[1] In reaching this determination, we have reviewed the issues raised by the defendant in his *pro se* brief filed in this court and find that none requires extended discussion or merits relief. The claim that the Hobbs Act counts in the indictment were void and that the district court therefore had no jurisdiction to try the defendant is based on nothing more than a provision allegedly contained in the 1997 U.S Attorney's Manual suggesting, as a policy matter, that robbery offenses under the Act should be prosecuted only in "instances involving organized crime, gang activity, or wide-ranging schemes." The conspiracy in this case, involving five individuals plotting to commit and variously involved in committing ten armed robberies over a period of some three months, could certainly qualify as a "wide-ranging scheme." But, in any event, it should be clear to the defendant that a prosecutor's policy manual is not law nor even interpretation of law. The claim is, therefore, frivolous. In a second claim, the defendant argues that certain testimony should not have been admitted because it was "ex parte" and, therefore, in violation of *Crawford v. Washington*, 541 U.S. 36 (2004). It is not evident from the defendant's discussion of this claim what is meant by the term "ex parte testimony." It *is* clear that introduction of the cellular telephone records cannot constitute a *Crawford* violation, because they are not "testimonial" and, most importantly, did not implicate the defendant in the offenses for which he was convicted. The claim that the government violated *Brady v. Maryland*, 373 U.S. 83 (1963), through non-disclosure of exculpatory discovery materials cannot be established based on the record now before us and, for the same reason, we would be unable to review the defendant's claim that the prosecutor violated the Jencks Act, 18 U.S.C. § 3500. Finally, the defendant's claim that identification evidence should have been suppressed under *United States v. Wade*, 388 U.S. 218 (1967), is without merit because he was identified in a photo array and not in an corporeal line-up.