NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 14a0209n.06

Case No. 13-5026

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

FILED
Mar 18, 2014
DEBORAH S. HUNT, Clerk

UNITED STATES OF AMERICA,               )
                                        )
        Plaintiff-Appellee,             )
                                        )
                                        )   ON APPEAL FROM THE UNITED
v.                                      )   STATES DISTRICT COURT FOR
                                        )   THE WESTERN DISTRICT OF
MARK EVANS,                             )   TENNESSEE
                                        )
        Defendant-Appellant.            )
                                        )
                                        )

BEFORE: SILER, McKEAGUE, and WHITE, Circuit Judges.

**SILER**, Circuit Judge.  Mark Evans appeals his sentence of 78 months of imprisonment and four years of supervised release, to be served consecutively to a sentence previously imposed for a separate offense.  Specifically, he asserts that the consecutive nature of the supervised-release sentence violates 18 U.S.C. § 3624(e), and that the district court improperly calculated the sentencing guideline range.  He also appeals the district court's denial of his request for self-representation.  For the reasons stated below, we **VACATE** the district court's sentence and **REMAND** for proceedings consistent with this opinion.

**BACKGROUND**

In 1997, Evans was convicted in the Western District of Texas of conspiracy to possess with the intent to distribute and distribution of cocaine.  While serving that sentence at the

Federal Correctional Institution ("FCI") Memphis, he and other inmates and employees of the FCI engaged in a complex tobacco and marijuana smuggling and distribution operation within the facility.

Eventually, Evans and others were indicted for the marijuana distribution conspiracy. Evans requested court-appointed counsel at his initial appearance, and the district court appointed Juni Ganguli. Despite having representation, Evans filed a number of *pro se* motions before and after trial. His early *pro se* motions sought new counsel, which the district court denied. Then, in 2012, after a jury convicted Evans of conspiracy to possess with the intent to distribute less than fifty kilograms of marijuana in violation of 21 U.S.C. § 846, he again filed a number of *pro se* motions, some of which asserted that his counsel provided ineffective assistance and requested substitute counsel. Evans, through Ganguli, also moved to continue the sentencing hearing, indicating that complications had arisen concerning the attorney-client relationship.

At a hearing in November 2012, held to discuss the *pro se* motions and any problems with the attorney-client relationship, Evans again requested substitute counsel. When the court refused, Evans asked to represent himself. The court determined that Evans's statements during the hearing showed that he sought new counsel, not self-representation, and denied his requests to proceed *pro se* at sentencing. After this hearing, Evans filed two more *pro se* motions asserting Ganguli's ineffectiveness, to no avail.

In early 2013, the district court sentenced Evans, represented by Ganguli. It attributed 80 pounds, or approximately 36 kilograms, of marijuana to Evans as a member of the conspiracy. It determined that Evans's total offense level was 24. With a criminal history category of III, the advisory guideline sentencing range was 63 to 78 months. Concluding that the amount of

marijuana attributed to Evans was a conservative estimate, the district court sentenced Evans to 78 months of incarceration followed by four years of supervised release. The incarceration and supervised-release terms were both to run consecutively to the periods of incarceration and supervised release that the Western District of Texas had imposed for Evans's previous cocaine offense conviction.

## DISCUSSION

### I. SUPERVISED RELEASE SENTENCE

Evans argues, and the United States concedes, that the term of supervised release violates 18 U.S.C. § 3624, because it runs consecutively to a previously imposed term of supervised release. Section 3624 provides, in pertinent part:

> The term of supervised release commences on the day the person is released from imprisonment and runs concurrently with any Federal, State or local term of probation or supervised release or parole for another offense to which the person is subject or becomes subject during the term of supervised release.

18 U.S.C. § 3624(e). The commentary to the Sentencing Guidelines notes that § 3624 prohibits the imposition of consecutive supervised-release sentences. *See* U.S. SENTENCING GUIDELINES § 5G1.2, cmt. 2(C). We have previously applied § 3624 to prohibit the imposition of consecutive terms of supervised release in two unpublished decisions. *See United States v. Skelton*, 68 F. App'x 605, 607 (6th Cir. 2003); *United States v. Salcido*, 29 F. App'x 216, 221 (6th Cir. 2002). Based on this authority, we hold that the portion of Evans's sentence that imposes a term of supervised release to run consecutively to the supervised-release sentence that the Western District of Texas levied must be vacated to comply with 18 U.S.C. § 3624.

## II.    DENIAL OF THE RIGHT TO SELF-REPRESENTATION

### A.  STANDARD OF REVIEW

Evans also assigns error to the district court's denial of his request to represent himself, a ruling he claims violates his Sixth Amendment right to self-representation.   In *Faretta v. California*, 422 U.S. 806, 807 (1975), the Supreme Court conclusively established that the Sixth Amendment endows criminal defendants with a right to self-representation.  This constitutional right and the Sixth Amendment right to counsel are mutually exclusive; they are "'two faces of the same coin,' [] in that the waiver of one right constitutes a correlative assertion of the other." *United States v. Conder*, 423 F.2d 904, 908 (6th Cir. 1970) (quoting *United States v. Plattner*, 330 F.2d 271, 276 (2d Cir. 1964)).

Sixth Circuit jurisprudence concerning the standard of review applicable to claims asserting violations of the right to self-representation is confused.  We have reviewed district court decisions permitting the defendant to self-represent *de novo* and for plain error.  *See, e.g.*, *United States v. Williams*, 641 F.3d 758, 766 (6th Cir. 2011) (noting that this circuit reviews such issues *de novo* or for plain error); *United States v. Cromer*, 389 F.3d 662, 679-80 (6th Cir. 2004) (reviewing the district court's factual findings for clear error and the district court's legal conclusions *de novo*); *United States v. McBride*, 362 F.3d 360, 365 (6th Cir. 2004) (determining that other circuits apply *de novo* review, but the Sixth Circuit either applies plain error review or omits any discussion as to the standard of review and conducts a thorough review of the court's colloquy with the defendant).  Denials of motions for self-representation have been reviewed *de novo* and for abuse of discretion.  *See, e.g.*, *United States v. Jones*, 489 F.3d 243, 247 (6th Cir. 2007) (reviewing the denial of the right to self-representation at sentencing *de novo*); *United States v. Bowker*, 372 F.3d 365, 385 (6th Cir. 2004) (reviewing the denial of the right to self-

representation for abuse of discretion), *vacated on other grounds by Bowker v. United States*, 543 U.S. 1182, 1182 (2005). Because the outcome here would be the same whether we review the issue *de novo*, for abuse of discretion, or for plain error, we again defer the decision on the standard of review to another day.

One further complication regarding the standard of review concerns the argument that the denial of the right to self-representation is a structural error. Structural errors are "structural defects in the constitution of the trial mechanism and thus defy analysis by harmless-error standards." *Arizona v. Fulminante*, 499 U.S. 279, 280 (1991). The class of structural errors is "very limited." *United States v. Marcus*, 560 U.S. 258, 263 (2010). In *McKaskle v. Wiggins*, 465 U.S. 168 (1984), the Supreme Court determined that "[s]ince the right of self-representation is a right that when exercised usually increases the likelihood of a trial outcome unfavorable to the defendant, its denial is not amenable to 'harmless error' analysis. The right is either respected or denied; its deprivation cannot be harmless." *Id.* at 177 n.8. We have never applied this holding to find that the denial of the right to self-representation during trial is a structural error, but we have so implied. S*ee Washington v. Renico*, 455 F.3d 722, 734 (6th Cir. 2006) (determining that the defendant relied on the denial of his *Faretta* right for appeal, because "denial of the *Faretta* right is a structural error for which [the defendant] need not show any prejudice"). We have also never applied this holding to find that the denial of the right to self-representation during sentencing is a structural error, the issue we presently face.

Resolving the question in the context of sentencing rather than at trial may prove more difficult, because "[t]he status of the accused defendant, who retains a presumption of innocence throughout the trial process, changes dramatically when a jury returns a guilty verdict." *Martinez v. Court of Appeal of Cal.*, 528 U.S. 152, 162 (2000) (distinguishing between a

defendant's Sixth Amendment rights at trial and on appeal). Still, we have "safely s[aid] that a criminal defendant in federal court has a right to represent himself or herself at sentencing," because "[c]riminal defendants in federal courts [] have a statutory right to 'plead and conduct their own cases personally or by counsel as, by the rules of such courts, respectively, are permitted to manage and conduct causes therein.'" *See Jones*, 489 F.3d at 248 (quoting 28 U.S.C. § 1654).[1] In deciding to extend the right to self-representation to criminal defendants at sentencing, *Jones* cited a Fifth Circuit opinion holding the same. *Id.* (citing *United States v. Shanklin*, 193 F. App'x 385, 387-88 (5th Cir. 2006)); *see also United States v. Davis*, 285 F.3d 378, 385 (5th Cir. 2002). In a published opinion, the Fifth Circuit later determined that the improper denial of the right to self-representation at sentencing is a structural error. *United States v. Cano*, 519 F.3d 512, 516 (5th Cir. 2008).

It is unclear whether our precedent mandates a similar conclusion. In *Jones*, where the district court required the defendant to maintain standby counsel, after determining that the right to self-representation covered the sentencing phase of the trial, we determined that when sentencing takes place outside the presence of a jury, the "right to self-representation is limited accordingly." 489 F.3d at 248-49 (noting that the "contours of the right to self representation . . . depend on the nature of the proceeding"). In such a circumstance, we observed that principles guiding the analysis as to whether a more limited right to self-representation was denied included whether the individual had the opportunity to address the court freely and whether, if evidence of a disagreement on strategy between the defendant and his standby counsel arose, the issue was resolved according to the defendant's will. *Id.* at 249. We did not clarify whether these

---

[1] We reached this holding despite acknowledging a contrary position the Fourth Circuit adopted in *United States v. Hyman*, 141 F.3d 1161, *3 (4th Cir. 1998) (unpublished table decision), that district courts maintain discretion as to whether to permit the defendant to proceed *pro se* at sentencing. *Jones*, 489 F.3d at 248.

considerations are limited to situations where the court permitted or required standby counsel. If not, denying self-representation at sentencing is perhaps amenable to harmless error review, and we will need to address these same questions to determine whether the denial was harmless.

Under the circumstances of the case *sub judice*, we need not decide whether the error is structural at sentencing. As explained below, if structural, the district court's improper denial of Evans's right to self-representation necessitates remand; if subject to harmless error review, the district court's improper denial of Evans's right to self-representation was not harmless based on the *Jones* considerations, and Evans is entitled to remand. Thus, without deciding the structural nature of a self-representation deprivation, we proceed to analyze whether the district court violated Evans's Sixth Amendment right.

## B. ANALYSIS

In *Faretta*, the Supreme Court determined that "[t]he right to defend is personal. The defendant, and not his lawyer or the State, will bear the personal consequences of a conviction. It is the defendant, therefore, who must be free to personally decide whether in his particular case counsel is to his advantage." 422 U.S. at 834. While this right extends to a criminal defendant at sentencing, *Jones*, 489 F.3d at 248, "the right to self-representation is not absolute." *Martinez*, 528 U.S. at 161. Accordingly, courts have developed a two-step process for the proper exercise of the Sixth Amendment right to self-representation.

The first step places a burden on the defendant to assert his right to self-representation clearly, unequivocally, and in a timely manner. *See Martin*, 25 F.3d at 295-96. A criminal defendant asserting his right to self-representation "should be made aware of the dangers and disadvantages of self-representation, so that the record will establish that 'he knows what he is doing and his choice is made with eyes open.'" *Faretta*, 422 U.S. at 835 (quoting *Adams v.*

*United States ex rel. McCann*, 317 U.S. 269, 279 (1942)).  Once the defendant properly asserts

his right to self-representation, the second step places the onus on the district court to conduct a

*Faretta* hearing to inquire into whether the waiver of the right to counsel is both knowing and

voluntary.  *Cromer*, 389 F.3d at 680.  In this circuit, the district court "must ask the defendant a

series of questions drawn from, or substantially similar to, the model inquiry set forth in the

*Bench Book for United States District Judges.*"  *McBride*, 362 F.3d at 366.

> Very generally, the model inquiry is thirteen questions about the defendant's familiarity with the law and legal system, and the charges against him.  This inquiry must be followed by a strong admonishment that the court recommends against the defendant trying to represent himself or herself.  Additionally, the district court must make a finding that the defendant has knowingly and voluntarily waived his or her right to counsel.

*Williams*, 641 F.3d at 767.  A district court's substantial compliance with these instructions will

suffice.  *Id.*[2]

Evans argues that although he clearly and unequivocally asserted his right to self-

representation, the district court denied his request and forced him to keep Ganguli as his counsel

rather than conduct a *Faretta* hearing.  The United States counters that the context of Evans's

requests demonstrates that he did not intend to proceed *pro se*, but rather sought to acquire new

counsel, equivocating his request for self-representation.

The trial court's colloquy with Evans in November 2012, demands a conclusion that

Evans clearly and unequivocally asserted his right to self-representation.  He initially sought

substitute counsel:

---

[2]  In an unpublished opinion, we have noted that waiver procedures may not be as complex at the sentencing phase, because "[t]he dangers of self-representation at trial are simply not present at sentencing."  *United States v. Napier*, 884 F.2d 581, *5 (6th Cir. 1989) (unpublished table decision).  However, our more recent decision in *Jones* weakens this notion, as do the court's implications in *McBride* that if the issue arose, the court may need to decide whether that holding was correct.  362 F.3d at 367.

> COURT: You filed a motion to dismiss counsel, and there's some – well – and so the question is what should we do at this time. Now, you're not requesting that you go without counsel, as I understand it, you want counsel?
>
> DEFENDANT: Yes, sir.
>
> COURT: Okay.
>
> . . .
>
> COURT: In this case, you want to have new counsel?
>
> DEFENDANT: Yes, sir.

However, as the hearing progressed, Evans plainly asserted his Sixth Amendment right to self-representation. After a long discussion about the ways in which Evans found his lawyer ineffective, the following dialogue took place, wherein the court denied Evans's motion for substitute counsel, and Evans then changed his request to one for self-representation:

> COURT: Well, your motions, as long as you are represented, are not going to be considered by the court, because you are represented by counsel, and there are many reasons for that. First of all, a person is entitled to, under the Sixth Amendment, to representation by counsel. Counsel is skilled in the rules and the law and is able to determine what is proper to present to the court and what's not. Also, counsel is bound by the Canons of Ethics and knows what he or she can or cannot submit, so we would not consider the papers.
>
> DEFENDANT: *Is it possible if I have to keep this counsel, can I represent myself?*
>
> COURT: Well, that's a whole different question. That's not – I didn't know that's where we might be going. One, the question is, does Mr. Ganguli think in this case that the relationship is one in which – well, first of all, are you going to talk to any counsel and deal with them, or are you just mad at Mr. Ganguli, or are you going to be mad at anybody who is your lawyer?
>
> DEFENDANT: I'm not going to be mad at anybody who is my lawyer. I want effective counsel.
>
> COURT: I understand. Well, that's a different answer. The answer still is then that we shouldn't look at – we shouldn't rule on your papers because you want counsel. You haven't changed, you want counsel, you will either have Mr. Ganguli or a new counsel appointed, so that's fine.

The next question then is really one that I would address to Mr. Ganguli, which is it sounds like this sort of came up as a surprise on the 21st of – I think that's the date, of November, and do you think this is a repairable relationship, and you ought to stay on the case because anybody else coming in, there's a lot of material here, there's a – we had a long – we had a fairly lengthy trial, a lot of witnesses. It was – the evidence was pretty overwhelming that, Mr. Evans, that you were involved in this and were the person in substantial part orchestrating this drug operation within a federal prison.

DEFENDANT: Perjured evidence, Your Honor.

COURT: Well, I don't have any information about that that would be the case. And we had a lot of information, so we don't have to debate that. The question is it would be highly beneficial to leave Mr. Ganguli in the case. The reason is all that information came in. We had the – we had the trial, and we had all the things that preceded the trial, we had all the discovery. A new lawyer isn't going to know that, and so it is not efficient at all to excuse counsel if the relationship can be one that can be repaired.

DEFENDANT: *Okay. Can I – can I represent myself at that point?*

COURT: Well, no, no, I have run into this increasingly, I want to represent myself, but I want to have counsel, and the answer is you have told me you want to have counsel under the Sixth Amendment, we're going to give you counsel, the question is whether Mr. Ganguli and you can work through this issue, and the two of you can work together to submit materials that are appropriate to receive in connection with the presentence report, that's the question.

DEFENDANT: *No, sir, we can't. I would like to represent myself, Your Honor.*

COURT: I couldn't accept that statement when you said also that you want counsel. The only choice right now is whether or not we're going to let Mr. Ganguli withdraw or whether – which would be complicated and a retracted [sic] process for the reason I have stated, or whether we're going to have him remain in the case and see if we can't repair the relationship. What do you think?

MR. GANGULI: Judge, I'm not asking to withdraw. I am willing to work with Mr. Evans.

DEFENDANT: *I don't want him, Your Honor, please. I would rather represent myself. I know enough law to represent myself.*

COURT: Let me assure you that beyond any doubt that what – that Mr. Ganguli is vastly better prepared to represent you. He went to law school, he's familiar with the rules of evidence, he's well-trained in the area. Not only that, he has been on the CJA panel now for how many years, we talked about that before?

DEFENDANT: Ten years, Your Honor.

COURT: Ten years, I knew it was getting up there, so he's well prepared.

After Evans made further allegations of ineffective assistance of counsel, the district court denied

the request for self-representation:

COURT: . . . Mr. Evans, you're not doing yourself any good.

DEFENDANT: No, sir. Your Honor, please, I'm just asking the court –

COURT: I'm not inclined to make a change right now. The reason is that you both have to try to work this out. Now, if we come back later on and it is impossible for you to do that, and it's because you won't cooperate, you have had your right to counsel. The Sixth Amendment doesn't provide that you will get a lawyer who will do inappropriate things for you. It says that you will have a person who is competent and skilled in the law.

DEFENDANT: Right.

As is evident from this colloquy, Evans alluded to self-representation four times during

the sentencing hearing. The first two references may not have been unequivocal assertions of his

Sixth Amendment rights, insofar as Evans appears to be asking the court about his rights without

actually averring them. However, coupling those two questions with the final two references to

self-representation, which were explicit requests to proceed *pro se*, it is quite obvious that Evans

unequivocally asserted his Sixth Amendment right to self-representation. *See Moore*, 531 F.3d

at 402. The United States does not argue that the motion was untimely. Therefore, Evans

satisfied his initial burden.

After this clear assertion of his Sixth Amendment rights, Evans was entitled to a *Faretta*

hearing to determine whether his waiver of the right to counsel was voluntary and intelligent.

*Cromer*, 389 F.3d at 680; *McBride*, 362 F.3d at 366. However, the ensuing discussion did not

come close to the type of inquiry *Faretta* requires of a district court upon the defendant's

expression of his intent to proceed *pro se*. *See Williams*, 641 F.3d at 766-67.

- 11 -

That Evans initially requested substitute counsel and maintained his counsel's ineffectiveness throughout the hearing does not undermine this conclusion. Asserting the right to self-representation while also seeking substitute counsel does not necessarily render the request equivocal. *See Adams v. Carroll,* 875 F.2d 1441, 1445 (9th Cir. 1989). The United States counters that two Sixth Circuit cases show that vacillation between asserting the right to self-representation and seeking new counsel does render the assertion ambiguous. In *United States v. Jackson*, 304 F. App'x 424, 426 (6th Cir. 2008), the defendant stated that he no longer wanted his attorney to represent him, and that he sought to represent himself. *Id.* at 426. The district court indicated that it would conduct a hearing on the issue, but, after entering an order that permitted the attorney to withdraw and appointed new counsel, it never held a *Faretta* hearing. *Id.* at 426-27. The defendant expressed no further discontent with his representation. *Id.* at 427. In affirming the district court's decision to deny the defendant self-representation, we stated that

> [t]he district court apparently divined, as have we, that the defendant was motivated less by a desire to engage in self-representation and more by extreme dissatisfaction with [his attorney] personally, . . . and that, if asked, his actual preference would probably have been to have new counsel appointed, an action that the district judge took almost immediately.

*Id.* at 428. Thus, we concluded that the statements were not unequivocal and that the defendant acquiesced to his new representation, which amounted to a waiver of his right to self-representation. *Id.* at 428-29.

The facts of *Jackson* are distinguishable from the instant case. Here, the district court did not grant Evans's requests for new counsel or self-representation. Rather, the court forced Evans's acquiescence by denying both requests. It would be speculative for this court to say that had the district court appointed new counsel, Evans would have revealed that he actually sought new counsel when he declared his desire to represent himself. Further, Evans maintained his

dissatisfaction with his counsel after the November 2012 hearing, as evidenced in his *pro se* motions asserting ineffective assistance of counsel and his statements at the sentencing hearing.

The other Sixth Circuit case on which the government relies is also distinguishable. The defendant in *United States v. Manthey* asserted that he wanted to proceed *pro se* at a pretrial hearing because of his previous counsel's ineffectiveness, and the court instead appointed new counsel. 92 F. App'x 291, 295 (6th Cir. 2004). Frustrated that the court would not immediately release him from custody, the defendant reiterated his desire to proceed *pro se*. *Id.* We considered the request for self-representation to be a "single, off-the-cuff remark," insufficient to constitute a clear and unequivocal request to proceed *pro se*. *Id.* However, in the present case, Evans asked about his right to represent himself twice, requested self-representation two more times, and indicated that he was knowledgeable enough about the law to defend himself. These were not the same type of off-the-cuff remarks we found insufficient to constitute a clear assertion of the defendant's Sixth Amendment rights in *Manthey*.

Further, the United States questions the applicability of *Faretta* to this case, because the defendant in *Faretta* never wavered from his position that he sought to represent himself. During the short period of time that the district court entertained Evans's request to represent himself, Evans was steadfast. Before that assertion, Evans indeed sought replacement counsel, and after the court refused his request for self-representation, Evans retreated to his prior calls of ineffective assistance. However, this is not the type of vacillation that would preclude us from determining that the request for self-representation was unequivocal.

That Ganguli represented Evans at the sentencing hearing, seemingly with Evans's consent, does not amount to a presumption of acquiescence to the district court's denial of his request for self-representation. *See Moore*, 531 F.3d at 403 (holding that no presumption of

acquiescence attached when the defendant permitted his attorney to call the next witnesses, because "[i]t would be wholly unreasonable to require [the defendant], in order to preserve his requests to proceed pro se, to refuse the trial court's orders to continue with the trial"). The district court made clear that Evans could not represent himself at the November 2012 presentencing hearing. It would be unfair to require Evans to reassert his request for self-representation to preserve his rights in the face of such a clear proscription from the court. Finally, no evidence suggests that Evans sought self-representation as a delay tactic or strategy for manipulating the trial. *See Martin*, 25 F.3d at 296-97.

Evans's assertion of his right to self-representation was clear and unequivocal. Thus, at a minimum, the district court should have held a *Faretta* hearing to examine whether Evans's assertion was knowing and voluntary. Absent such an inquiry, the trial court violated Evans's Sixth Amendment rights. Under the structural error analysis, this alone mandates reversal. Moreover, while Evans had ample opportunity to address the court freely, the record shows that Evans and his counsel disagreed as to strategy on important issues including which motions to file, what evidence to introduce, and which objections to register. Because these issues were evidently not resolved in accordance with Evans's desires, the district court's decision to deny Evans self-representation at sentencing cannot be considered harmless error. *Cf. Jones*, 489 F.3d at 249. Therefore, we must vacate Evans's sentence and remand the case to the district court to conduct a *Faretta* hearing inquiring into whether Evans's assertion of his right to self-representation was knowing and voluntary.

## CONCLUSION

We need not address Evans's third argument challenging the district court's sentencing guideline range calculation, given that the district court is instructed to resentence Evans after

conducting a *Faretta* inquiry, which may lead to Evans's proceeding *pro se* at a resentencing hearing. For the reasons stated above, we **VACATE** Evans's sentence and **REMAND** for further proceedings in accordance with this opinion.