UNITED STATES of America

v.

Dominic CATALDO, Defendant.

No. S 84 Cr. 809 (JFK).

United States District Court, S.D. New York.

Dec. 9, 1985.

Rudolph W. Giuliani, U.S. Atty. for the S.D. of N.Y., for the U.S.; Aaron R. Marcu, Asst. U.S. Atty., of counsel.

Stanley A. Teitler, P.C., New York City, for defendant Dominic Cataldo; Stanley A. Teitler, Amy Adelson, Michael L. Spiegel, of counsel.

## OPINION AND ORDER

KEENAN, District Judge:

Involved herein is a motion for a mistrial and a severance on behalf of the above-named defendant who is presently in his eighth week of trial together with nine co-defendants alleged to be members and associates of the Colombo Family of La Cosa Nostra. The 51–count indictment charges the defendants with substantive violations of, and conspiracy to violate, the Racketeering Influenced and Corrupt Organizations Act (RICO), 18 U.S.C. § 1962(c) and (d), through a wide range of criminal activity. For the reasons stated below, the Court denies the application.

In his affidavit in support of the motion for a mistrial and severance, the defendant asserts that he has just recently learned that there is a possible conflict of interest between him and the attorney representing him in the trial of this case, Michael Coiro, Esq. The possible conflict perceived by the defendant arises from three cases in which Mr. Coiro was involved.

In the first of these cases, Mr. Coiro represented Mr. Cataldo in 1972 before New York State Supreme Court Justice William Brennan, who is currently on trial in the Eastern District of New York for accepting illegal payments. *United States v. Brennan,* 85 Cr. 452 (Weinstein, J.). Mr. Cataldo was charged therein with robbery of watches from a warehouse at Kennedy International Airport. Justice Brennan dismissed the case on the People's motion after suppressing an identification of the defendant by a night watchman.

In the second case at issue, Mr. Coiro represented John Donelly (an unindicted co-conspirator in the instant case) at his arraignment in 1969 on charges of illegal

possession of a gun. Mr. Donelly was represented by another attorney for the remainder of the proceedings. He was convicted of the charges. The conviction was reversed, however, and Mr. Donelly pleaded guilty to a misdemeanor before Justice Brennan and received a fine.

The third case involving Mr. Coiro has been referred to in the trial of Justice Brennan in the Eastern District. It has been alleged in that trial that a Mr. Sal Polisi gave $75,000 to Mr. Coiro in 1979 to "fix" another case before Justice Brennan.

The defendant asserts that he, Mr. Coiro and Mr. Donelly may be targets of a grand jury investigation in the Eastern District of New York into "fixed" cases before Justice Brennan. The defendant claims that he has become estranged from Mr. Coiro as rumors about the Eastern District grand jury investigation have come to his attention. Mr. Cataldo asserts that recently his communications with his attorney have been limited by his fear that Mr. Coiro may be attempting to gain information from him which would assist Mr. Coiro in defending himself if he were indicted. The defendant requests a mistrial and a severance in order to retain a new attorney and allow him sufficient time to prepare for trial.

In addressing this application, the Court is mindful of two potentially conflicting policy factors. First, a defendant has a constitutional right to representation that is free from conflicts of interest. *Wood v. Georgia,* 450 U.S. 261, 271, 101 S.Ct. 1097, 1103, 67 L.Ed.2d 220 (1981). Second, a court must be aware of the "disruptive effect upon court calendars in complex, multi-party cases, when lawyers seek last minute severances, continuances or other strategic advantage by 'newly discovered' conflicts of interests." *United States v. Morando,* 628 F.2d 535, 536 (9th Cir.1980); see *Holloway v. Arkansas,* 435 U.S. 475, 486–87, 98 S.Ct. 1173, 1180, 55 L.Ed.2d 426 (1978) (court has interest in avoiding abuses caused by untimely motion for separate counsel "for purposes of delay or obstruc-

tion of the orderly conduct of the trial"); *United States v. Bentvana,* 319 F.2d 916, 936 (2d Cir.), *cert. denied,* 375 U.S. 940, 84 S.Ct. 345, 11 L.Ed.2d 271 (1963). Of course, preservation of a defendant's constitutional rights must take precedence over concerns for efficiency and conservation of judicial resources.

In support of his motion, the defendant cites cases in which the conflict of interest first appeared, or was first asserted, after conviction of the defendants therein. *See, e.g., Cuyler v. Sullivan,* 446 U.S. 335, 338, 100 S.Ct. 1708, 1713, 64 L.Ed.2d 333 (1980); *United States v. Cancilla,* 725 F.2d 867 (1984). In such cases, a defendant seeking to overturn his conviction must show that there was an actual conflict of interest that adversely affected his attorney's performance at trial. *Cuyler v. Sullivan,* 446 U.S. 335, 348, 100 S.Ct. 1708, 1718, 64 L.Ed.2d 333 (1980).

Where, as here, the possibility of a conflict is raised before the conclusion of the trial, the trial court must "take command of the situation." *United States v. Bernstein,* 533 F.2d 775, 788 (2d Cir.1976). Often, this will take the form of an evidentiary hearing

> to determine whether there exists such a conflict of interest ... that the defendant will be prevented from receiving advice and assistance sufficient to afford him the quality of representation guaranteed by the sixth amendment. In addition, the trial judge should see that the defendant is fully advised of the facts underlying the potential conflict and is given an opportunity to express his or her views.

*United States v. Alberti,* 470 F.2d 878, 881–82 (2d Cir.1972), *cert. denied,* 411 U.S. 919, 93 S.Ct. 1557, 36 L.Ed.2d 311 (1973); *cf. United States v. Lovano,* 420 F.2d 769, 773 (2d Cir.) ("The rule in this circuit is that some specific instance of prejudice, some real conflict of interest, resulting from a joint representation must be shown to exist before it can be said that an appellant has been denied the effective assistance of counsel."), *cert. denied,* 397 U.S. 1071, 90 S.Ct. 1515, 25 L.Ed.2d 694 (1970).

The Court has in this case on November 22, 1985 held a conference with the defendant, Mr. Coiro, the attorney representing Mr. Cataldo for the purposes of this motion, Stanley Teitler, Esq., and the Assistant United States Attorneys. On December 9, 1985 the Court heard testimony from Mr. Coiro concerning this motion. Mr. Coiro's testimony to the effect that he would prefer not to proceed amounts to no more than an expression of his desire. Nothing has been demonstrated to the Court which in any way would serve to inhibit effective advocacy by him on Mr. Cataldo's behalf.

The defendant does not claim that any of the alleged incidents involving himself, Mr. Coiro, Mr. Donelly, Mr. Polisi and Justice Brennan are in any way related to the facts underlying the instant case. Rather, he baldly asserts that Mr. Coiro "could potentially misuse the attorney client relationship he has ... in order to obtain information useful to him in his own defense or to strengthen his hand in plea bargaining." Defendant's Memorandum of Law at 4. The defendant further asserts that Mr. Coiro "may also be unable to give impartial advice to Cataldo regarding a guilty plea in this case for fear that Cataldo would cooperate with the government against him." *Id.* The Court is not aware of any desire by the defendant Cataldo to plead guilty in connection with the charges in the instant case. This is the first reference to a plea of guilty that the Court has learned of from any defendant in S 84 Cr. 809 (JFK).

As the defendant concedes, the cases involving him, Mr. Donelly, Mr. Polisi and Justice Brennan are totally unrelated to the allegations in the instant case. The defendant is charged herein with two RICO counts, one being a conspiracy count, the other substantive. Mr. Cataldo is charged with four racketeering acts as predicates to the RICO counts. The acts involve bribery of a public official on separate occasions to induce that official to arrange a transfer of Carmine Persico (a co-defendant in the instant case) from one federal prison to an-

other, to prevent the commencement of a criminal prosecution against Mr. Cataldo, and to obtain his own transfer from one prison to another, as well as a reduction in his sentence of incarceration; and distribution of narcotics. None of these charges is based on facts related in any way to any incidents involving Justice Brennan.

In view of the total lack of connection between the facts of this case and the alleged incidents involving Justice Brennan, the Court finds the assertions of the defendant unconvincing. The Court is convinced that no information pertinent to Mr. Coiro's defense of his client in this case would assist Mr. Coiro in the defense of possible charges against him based on unrelated cases.

Moreover, the defendant's alleged concern that Mr. Coiro or he may be indicted in connection with those cases is at best speculative. Indeed, the affidavit of Mr. Teitler in support of this application reveals that he was told by the prosecutor in the *Brennan* case "that no charges would be brought [against Mr. Cataldo or Mr. Coiro] in the foreseeable future." Affidavit of Stanley A. Teitler at 2.

The possibility that Mr. Coiro may use information concerning any of the three Eastern District matters obtained from the defendant in the course of this case to "strengthen his hand in plea bargaining" is so speculative that it does not rise to the level of a conflict of interest in view of the lack of any charges, now or in the foreseeable future, against Mr. Coiro as a result of his appearances before Justice Brennan. There is no need for the defendant and Mr. Coiro to confer about any of the Brennan situations insofar as the defense to the instant charges is concerned. As pointed out above, they are totally unrelated. Moreover, the defendant's contention that his fear that Mr. Coiro may use information learned from him to the defendant's detriment has hampered his communications with Mr. Coiro is belied by his knowing and intelligent waiver before Judge Brieant of potential conflicts arising from a similar situation.

In earlier proceedings before Judge Brieant on this case, Mr. Cataldo was questioned about his awareness of Mr. Coiro's indictment in the Eastern District of New York in *United States v. Angelo Ruggiero*. The *Ruggiero* case is unrelated to the *Brennan* case or the present prosecution. The defendant stated that he was aware of Mr. Coiro's indictment and understood the possibility of a conflict of interest. Judge Brieant asked the defendant:

Are you aware of the possibility that Mr. Coiro or any attorney so situated may be unable to give you impartial advice because he has another ongoing matter with the government at the same time and there is a possible incentive or risk that anybody so situated might be motivated to act in some fashion which would improve his relationship with the government prosecutors in his own case and possibly to your detriment? Do you understand that that risk may exist?

*United States v. Cataldo*, 84 Cr. 809. Transcript of Dec. 5, 1984 at 5. The defendant replied, "Yes, I understand." *Id.* Judge Brieant continued,

Do you understand further that Mr. Coiro or any attorney so situated might be unwilling or unable to advise you impartially as to whether or not you should effect a disposition of this case or how this case should be handled because of the fact that he might fear that any discussion you had with the government might adversely affect his own relationships in connection with his possible difficulties in the Eastern District or elsewhere; do you understand that?

*Id.* at 5-6. The defendant responded, "Yes, I do." *Id.* at 6. Judge Brieant further asked whether the defendant understood that Mr. Coiro might be required to focus his attention on his own defense to the detriment of the defendant and might be called to trial at any time, leaving the defendant to obtain a new attorney at the last minute. To each of these questions, the defendant responded affirmatively. *Id.*

Judge Brieant then asked the defendant,

Now, do you understand that you have a right to make a change in counsel at

any time, providing that change does not delay the trial, and that it is your obligation to yourself to consider whether these matters might impair your constitutional right to have the effective independent representation of counsel in connection with this case due to the fact that your attorney is under indictment in federal court in a different district; do you understand that?

The defendant replied, "Yes, I do." Finally, Judge Brieant informed the defendant as follows:

If you change your mind later, you have the right to do that providing it does not delay the actual trial of this case. There has been no trial date set yet in your case, but there will be shortly, and so, therefore, you should continue with your own interest, to keep examining into this matter and to keep fully informed and discuss with Mr. Coiro whatever you wish to, and furthermore, if you need any further or other additional information from the Court to exercise your continued right to have impartial representation, then you can ask to have a conference with the Court and the attorneys which will include the U.S. Attorney, same as we are having today, and, of course, you are free at any time to speak directly with Mr. Coiro about it; do you understand that?

Again, the defendant replied, "Yes, I understand."

Perhaps even more telling, when Mr. Coiro was accused of attempting to "fix" a bribery case in the Eastern District, a case based on acts which form one of the predicate acts charged in this case against Mr. Cataldo, the defendant again waived any potential conflict of interest and pleaded guilty there. *United States v. Cataldo*, 81 Cr. 24 & 25, Transcript of March 5, 1981 at 4–6.

While the Court does not think that these prior knowing and intelligent waivers of the defendant's right to have counsel unaffected by conflicts of interest constitute a blanket waiver of that right in the event of similar situations arising after the waivers were made, the Court believes it to be proper to consider these waivers in measuring the risk of an actual conflict of interest now. The defendant has shown a willingness, before the start of this lengthy, multi-defendant trial, to be represented by Mr. Coiro, whom he knew to be under indictment in another district. This, combined with the lack of any new facts other than rumors and speculation to support the defendant's motion, and the absence of any present indictment of Mr. Coiro or the defendant as a result of any connection with Justice Brennan, convince the Court that no conflict of interest, or reasonable possibility thereof, has recently arisen between the defendant and his counsel. The Court concludes that Mr. Coiro is fully capable of providing the defendant advice and assistance sufficient to afford him the quality of representation guaranteed by the sixth amendment. However, if the defendant insists on discharging Mr. Coiro, he may do so and he may retain Mr. Teitler or any other lawyer of his choosing but, as Judge Brieant noted, the trial of this case will not be delayed. If Mr. Cataldo wishes to have both Mr. Coiro and Mr. Teitler as his counsel, he may do so and have both of them present with him at counsel table for the remainder of the trial.

Accordingly, the motion of defendant Cataldo for a mistrial and severance is denied.

SO ORDERED.