Filed 3/30/16

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SEVEN

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>    v.<br><br>BALTAZAR CULBADORA FEDALIZO,<br><br>    Defendant and Appellant. | B263029<br><br>(Los Angeles County<br>Super. Ct. No. KA103656) |

APPEAL from an order of the Superior Court of Los Angeles County, Wade D. Olson, Temporary Judge.  (Pursuant to Cal. Const., art. VI, § 21.)  Affirmed.

Richard B. Lennon, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Gerald A. Engler, Chief Assistant Attorney General, Lance E. Winters, Senior Assistant Attorney General, Mary Sanchez and Noah P. Hill, Deputy Attorneys General, for Plaintiff and Respondent.

_____

## INTRODUCTION

While representing himself, defendant Baltazar Culbadora Fedalizo admitted he had violated his felony probation in this case by committing another crime in a new case and was sentenced in both cases to an aggregate three-year term in county jail. After the passage of Proposition 47, defendant petitioned to recall his sentence in both cases. The trial court appointed counsel for him, granted the petition in this case only, and resentenced him on three misdemeanor convictions to three consecutive terms of 364 days in county jail to be served concurrently with the terms imposed on the four remaining misdemeanor counts. Defendant claims that he was denied his Sixth Amendment right to represent himself and his right to be present at the resentencing hearing in this case. Because the record before us indicates that defendant waived these rights, we affirm.

## PROCEDURAL BACKGROUND

In June 2014, defendant was charged with four felony counts of second degree burglary (Pen. Code, § 459),[1] one felony count of receiving stolen property (§ 496, subd. (a)), and misdemeanor counts of possession of burglary tools (§ 466) and driving with a suspended license (Veh. Code, § 14601.1, subd. (a)). (*People v. Fedalizo* (Super. Ct. L.A. County, 2014, No. KA103656).)

In August 2014, defendant, representing himself, waived his rights to a jury trial and pleaded no contest to all counts. The trial court placed defendant on three years of formal probation with credit for time served.

In September 2014, defendant violated the terms of his probation by committing another crime, counterfeiting a seal (§ 472). He was charged with this crime in a felony complaint filed a few months later. (*People v. Fedalizo* (Super. Ct. L.A. County, 2014, No. KA108474).)

---

[1] Statutory references are to the Penal Code, unless otherwise indicated.

2

In December 2014, defendant appeared for an arraignment and plea on the felony complaint for counterfeiting a seal.   At that hearing, defendant announced that while he had worked with a lawyer from the public defender's office to obtain a plea agreement with the prosecution, he wished to represent himself "for the plea and the sentencing." The trial court granted his request.  After waiving his rights to counsel, a preliminary hearing, and a jury trial, defendant pleaded no contest to one felony count of counterfeiting a seal in case No. KA108474 and admitted his probation violation in case No. KA103656.  Pursuant to the negotiated agreement, the trial court sentenced defendant to three years in county jail in case No. KA103656 (consisting of the three-year upper term for one count of burglary, concurrent two-year middle terms on the remaining felony counts, and concurrent six-month and one-year terms for possession of burglary tools and driving on a suspended license, respectively).  In case No. KA108474, the court sentenced defendant to a term of 365 days in county jail for counterfeiting a seal to be served concurrently with the sentence imposed in case No. KA103656.

On February 6, 2015, defendant filed a petition in propria persona to reduce his five felony convictions for burglary and receiving stolen property in case No. KA103656 to misdemeanors under Proposition 47.  He filed a similar petition to reduce his felony conviction for counterfeiting a seal in case No. KA108474.

On March 5, 2015, the court heard the Proposition 47 petitions.  Defendant was not present at the hearing.  According to the minute order—and as confirmed by the reporter's transcript of the proceedings—defendant was represented by appointed counsel, a deputy public defender.  The record does not reflect when counsel was appointed to represent defendant, though defendant acknowledges on appeal that the court "appointed counsel" for him.  The court granted the petition in this case without opposition by the prosecution and reduced defendant's five felony convictions to misdemeanors.  Before resentencing defendant, the trial court noted for the record that the deputy public defender had waived defendant's appearance.  The court then resentenced defendant without objection to three consecutive terms of 364 days in county jail on counts 1 through 3, and concurrent terms on the four remaining misdemeanor counts.

3

The trial court then denied defendant's petition to reduce his felony conviction for counterfeiting a seal to a misdemeanor under Proposition 47, which we affirmed in a separate appeal. (*People v. Fedalizo* (Dec. 22, 2015, B264538 [nonpub. opn.].)  The trial court did not resentence defendant in that case.

On March 30, 2015, defendant filed a "motion to modify sentence structure," which this court deemed the notice of appeal in this case.  In that "motion," defendant challenged the propriety of imposing consecutive sentences.  He did not complain about being represented by counsel at the resentencing hearing.

## DISCUSSION

Defendant contends that the trial court deprived him of his Sixth Amendment right to represent himself at the Proposition 47 hearing.[2]  An erroneous denial of a valid request for self-representation is reversible per se.  (*People v. Williams* (2013) 58 Cal.4th 197, 253.)  We reject defendant's contention because it is based on the unsupported assumption that he continued to assert rather than waive this right.  We also reject his contention that, apart from the alleged violation of his right to self-representation, the trial court deprived him of his right to be present at the hearing.  Defendant has forfeited the issue, and the argument is otherwise meritless.

## A.    THE SIXTH AMENDMENT RIGHT TO SELF-REPRESENTATION

Under the Sixth and Fourteenth Amendments, a criminal defendant has two mutually exclusive rights at all critical stages of a criminal prosecution—the right to

---

[2]    Division Eight of this court recently decided, as "a question of first impression," that "a postconviction resentencing hearing on a petition under [Proposition 47] is a 'critical stage' of a criminal prosecution to which the Sixth Amendment right to counsel attaches." (*People v. Rouse* (Feb. 29, 2016, B261503) ___ Cal.App.4th ___, ___, ___ [2016 WL 772546 at pp. 3, 5].)  The People do not question whether defendant had such a right.  Instead, the People contend that defendant's prior waiver of his right to counsel did not extend to the resentencing hearing because that hearing "constituted a new proceeding."  The case cited by the People, *People v. Crayton* (2002) 28 Cal.4th 346, does not support this contention.  On the contrary, the court there concluded that, under federal law, "a waiver of counsel has been held to remain in effect despite various breaks in the proceedings," up to and including resentencing.  (*Id.* at pp. 362-363.)

4

counsel and the right to self-representation. (*Faretta v. California* (1975) 422 U.S. 806, 819 [95 S.Ct. 2525, 45 L.Ed.2d 562] ["The Sixth Amendment does not provide merely that a defense shall be made for the accused; it grants to the accused personally the right to make his defense"]; accord, *People v. Lewis and Oliver* (2006) 39 Cal.4th 970, 1001.)

There are fundamental differences between these two rights. (*People v. Marshall* (1997) 15 Cal.4th 1, 20 ["The high court has not extended the same kind of protection to the right of self-representation"].) For example, "[t]he right to counsel is self-executing; the defendant need make no request for counsel in order to be entitled to legal representation." (*People v. Koontz* (2002) 27 Cal.4th 1041, 1069.) The right to self-representation, on the other hand, must be clearly, timely, and effectively invoked. Effective invocation of the right to self-representation requires a defendant to waive the right to counsel knowingly, intelligently, and voluntarily. (*Faretta v. California*, *supra*, 422 U.S. at p. 835 [citing the waiver standard set forth in *Johnson v. Zerbst* (1938) 304 U.S. 458 [58 S.Ct. 1019, 82 L.Ed. 1461] (the *Zerbst* standard)].) Courts must indulge every reasonable inference against waiver of the right to counsel. (*Brewer v. Williams* (1977) 430 U.S. 387, 404 [97 S.Ct. 1232, 51 L.Ed.2d 424]; *Marshall*, *supra*, at p. 20.)

Even after effective invocation, the right to self-representation can be waived. The standard for waiving the right to self-representation is substantially less stringent than it is for waiving the right to counsel. That is, the United States Supreme Court has not applied the *Zerbst* standard to the right to self-representation. (*McKaskle v. Wiggins* (1984) 465 U.S. 168, 183 [104 S.Ct. 944, 79 L.Ed.2d 122].) That right may be waived expressly or impliedly through conduct that is inconsistent with the assertion of the right. (*Ibid*. ["Once a *pro se* defendant invites or agrees to any substantial participation by counsel, subsequent appearances by counsel must be presumed to be with the defendant's acquiescence, at least until the defendant expressly and unambiguously renews his request that standby counsel be silenced"]; accord, *People v. D'Arcy* (2010) 48 Cal.4th 257, 285 ["a waiver or abandonment of the *Faretta* right to self-representation may be inferred from a defendant's conduct"]; *People v. Rudd* (1998) 63 Cal.App.4th 620, 631

5

["the Sixth Amendment self-representation right does not exist when a defendant prior to or during trial acquiesces in the assignment or participation of counsel in the defense"].)[3]

Applying the relevant waiver standard, we conclude that defendant has not demonstrated that he was denied his right to self-representation. At the hearing on March 5, 2015, a deputy public defender appeared and represented that defendant had waived his presence. Absent evidence that defense counsel misrepresented his authority to appear for defendant and waive his presence, we cannot presume that counsel neglected to obtain defendant's consent before proceeding as his attorney. (*People v. Sanghera* (2006) 139 Cal.App.4th 1567, 1573 ["Perhaps the most fundamental rule of appellate law is that the judgment challenged on appeal is presumed correct, and it is the appellant's burden to affirmatively demonstrate error"].) To do otherwise would be contrary to the basic requirement that we ""'"indulge in every presumption to uphold a judgment"'"" and that we look to the appellant to show error. (*People v. Sullivan* (2007) 151 Cal.App.4th 524, 549.)[4]

---

[3] The federal courts have applied this standard as well. (See, e.g., *Munkus v. Furlong* (10th Cir. 1999) 170 F.3d 980, 984 ["[A] waiver or a termination of the right to self-representation may occur without the defendant's knowledge or consent. In fact, a waiver or termination may result merely from the defendant's equivocation"]; *U.S. v. Singleton* (4th Cir. 1997) 107 F.3d 1091, 1096 ["'the right to self-representation can be waived by failure timely to assert it, or by subsequent conduct giving the appearance of uncertainty'"]; *Williams v. Bartlett* (2d Cir. 1994) 44 F.3d 95, 100 ["Once asserted, however, the right to self-representation may be waived through conduct indicating that one is vacillating on the issue or has abandoned one's request altogether"].)

[4] The dissent attempts to distinguish *Sanghera* and *Sullivan* on their facts and in the process loses sight of the principle for which they stand—a principle that is at the core of appellate review and at the center of our disagreement. "'A judgment or order of the lower court is *presumed correct*. All intendments and presumptions are indulged to support it on matters as to which the record is silent, and error must be affirmatively shown. This is not only a general principle of appellate practice but an ingredient of the constitutional doctrine of reversible error.' [Citations.]" (*Denham v. Superior Court* (1970) 2 Cal.3d 557, 564; accord, *Mountjoy v. Bank of America, N.A.* (Feb. 29, 2016, No. C077283) ___ Cal.App.4th ___, ___ [2016 WL 772642 at p. 5].)

The subsequent facts, moreover, do not call into question the deputy public defender's representations to the trial court. Shortly after the March 5th hearing, defendant himself moved to modify the misdemeanor sentence. If defendant had not authorized the attorney to represent him at that hearing, this would have been an exceptionally opportune time to notify the court of this fact. (Cf. *People v. Kenner* (1990) 223 Cal.App.3d 56, 62 ["Defendants who sincerely seek to represent themselves have a responsibility to speak up"].) Yet he did not suggest that such an irregularity had occurred. Nor did he seek to set aside all that had occurred at the hearing while being represented by counsel: he accepted the reduction to a misdemeanor and only protested the use of consecutive resentencing. In addition, when defendant appealed the denial of his Proposition 47 petition in case No. KA108474, which the trial court heard immediately after the resentencing in this case, he did not claim that the deputy public defender lacked authority to appear for him and waive his presence. All the evidence thus points in one direction—namely, that defendant authorized counsel to represent him or at least acquiesced in the representation. At least that is the record before us, and defendant has offered nothing to the contrary despite his affirmative burden to show error. (*People v. Sullivan*, *supra*, 151 Cal.App.4th at p. 549.)

The dissent reaches the opposite conclusion because it reverses the presumptions on appeal, assuming error rather than correctness. Viewed in its proper light, the record shows that the deputy public defender made an appearance on behalf of defendant and waived his client's right to be present: the minute order indicates that defendant was being represented by the deputy public defender and appearing through him pursuant to section 977; and the reporter's transcript indicates that the deputy public defender appeared for defendant and waived his presence. If the presumption of correctness is to have any meaning, it requires us to draw a reasonable inference that defendant authorized the deputy public defender to act on his behalf and waive his presence.[5] To presume

---

[5] In its search for error rather than correctness, the dissent narrowly construes the record. The dissent states that "the deputy public defender never said he represented

7

otherwise is to infer instead that the lawyer acted without authority in violation of his solemn legal duty. (Bus. & Prof. Code, § 6104 [attorney precluded from appearing for a party without authority].) That is precisely the negative inference defendant invites us to make on appeal.[6] The dissent accepts this invitation and does so without addressing how the record establishes lack of authority and without meaningfully explaining how its view comports with well-settled law requiring us to draw the opposite conclusion. (See *Tsakos Shipping & Trading, S.A. v. Juniper Garden Town Homes, Ltd.* (1993) 12 Cal.App.4th 74, 95 ["[A] presumption exists that an attorney who appears on behalf of a party has authority to do so. This presumption may be overcome only by a strong showing that the attorney had no authority"]; accord, *Sarracino v. Superior Court* (1974) 13 Cal.3d 1, 13 ["An attorney's authority to represent his purported client is presumed in the absence of a strong factual showing to the contrary"]; *In re Helen W.* (2007) 150 Cal.App.4th 71, 78 ["in the absence of evidence affirmatively showing the attorney's lack of authorization, a notice of appeal signed by the client's attorney should raise no question about its

---

Fedalizo." (Dis. opn., p. 3.) But the deputy public defender's actions speak equally loudly: he proceeded to represent defendant after the trial court noted his representation for the record. It is this same narrow reading that leads the dissent to conclude that the deputy public defender did not waive his client's presence. After noting that the deputy public defender had "waiv[ed] [his] client's appearance," the trial court resentenced defendant. The trial court then called defendant's second Proposition 47 case (No. KA108474) and confirmed with the deputy public defender that he waived his client's appearance. The record thus reflects a waiver in each of the back-to-back proceedings. Yet the dissent ignores the first waiver and treats the second as if it had occurred in a separate proceeding on a separate day with a separate client. Absent supporting facts in the record, we should not draw the counterintuitive conclusion that defendant authorized the deputy public defender to represent him in only one of two simultaneously heard cases that could have resulted in a related resentencing if both petitions were granted.

6        Defendant argues: "While it is true that the record makes no showing that [defendant] never consulted with appointed counsel, the inference that there was no such consultation is strong given when and how counsel was appointed and the fact that only one month passed between the filing of the petition and the hearing, and that [defendant] was in state prison that entire time."

8

validity"]; *People v. American Bankers Ins. Co.* (1987) 191 Cal.App.3d 742, 745 ["An oral statement by counsel that he is appearing on the defendant's behalf and is ready to proceed with the hearing or trial will suffice absent proof that the attorney did not have authority to proceed on the defendant's behalf"].)

To assume that the deputy public defender acted without authority would not only be contrary to well-settled law and the norms of appellate review, but also would cause serious and needless disruption to the court system.[7] Courts routinely rely on the express or implied representations of attorneys, as officers of the court, on a wide range of matters. (See, e.g., *In re Reno* (2012) 55 Cal.4th 428, 510 ["Attorneys are officers of the court and have an ethical obligation to advise the court of legal authority that is directly contrary to a claim being pressed"]; *Hahn v. Diaz-Barba* (2011) 194 Cal.App.4th 1177, 1191 [staying civil litigation and relying on representations of attorneys as officers of the court that their clients will submit to the jurisdiction of the Mexican courts].) The inability to rely on counsel's representations would be especially disruptive in misdemeanor courts. In most misdemeanor cases, a defendant is not required to make an appearance. (§ 977, subd. (a).) When defense counsel appears in such cases stating that he or she is appearing "977(a)," trial courts regularly accept that representation, unless there is specific cause for doubt. A trial court is not required to get written confirmation from the defendant or order the defendant to appear for that purpose. (*Olney v.*

---

[7] The dissent wrongly suggests that the "true basis" of our implied waiver finding is that we are more concerned about court efficiency than constitutional rights. (Dis. opn., p. 6.) Nothing could be further from the truth: we would not hesitate to reverse if the record demonstrated that defendant's lawyer acted without authority. Our disagreement with the dissent is not over the importance of constitutional rights; rather, we part ways on a fundamental issue of appellate review. The dissent would find waiver if the defense lawyer had expressly stated that he had authority to appear for defendant, and otherwise presumes lack of authority. We find that the lawyer's act of appearing on behalf of his client and waiving his presence conveys the same meaning, particularly in light of the presumption of authority established in a long line of cases. Applying the presumptions of correctness and authority, we will not assume—as does the dissent—that the lawyer acted improperly.

*Municipal Court* (1982) 133 Cal.App.3d 455, 461, fn. 5.) We see no reason to disturb the normal operations of the court out of fear that a defense attorney will not fulfill his or her most basic duty.[8]

Furthermore, trial courts have substantial flexibility to devise practical procedures to implement Proposition 47, so long as those procedures are consistent with the proposition and any applicable statutory or constitutional requirements. (*People v. Perkins* (2016) 244 Cal.App.4th 129, 138 ["We recognize Proposition 47 has imposed a substantial, if temporary, burden on the courts. Superior courts have inherent authority to adopt procedures needed to exercise jurisdiction as well as to manage and control their dockets"].) In this context, a trial court is not required to determine directly from the defendant whether he or she has consented to legal representation. As the leading treatise on Proposition 47 aptly states: "It would be wasteful of court time and resources to schedule court hearings for the purpose of determining whether a petitioner or applicant desires an attorney. Courts may find it most productive to refer all pro se petitions to the public defender, which, in turn, would make personal contact with the individual." (Couzens, Bigelow & Prickett, Sentencing California Crimes (The Rutter Group 2015) § 25:8.)

The trial court in this case appeared to follow this procedure and appointed the public defender's office. Although the record does not disclose who initiated discussions about legal representation (i.e., the court, the deputy public defender, or defendant), this

---

[8]     In the event that an attorney does breach his or her duty, a defendant is free to ask the trial court to set aside any ruling made in violation of the defendant's Sixth Amendment rights or pursue an appropriate appellate or collateral remedy. A direct appeal, however, is not viable where the record omits critical facts necessary to support a claim. By way of analogy, a direct appeal raising a claim of ineffective assistance of counsel that depends on an attorney-client communication must provide record evidence of that communication. (*People v. Pope* (1979) 23 Cal.3d 412, 426 [collateral review required for ineffective assistance claims that depend on evidence outside the record].) In deciding an appeal, we do not assume facts, much less facts that are contrary to the record—which is what we would have to do here if we were to conclude that defense counsel misrepresented his authority to the court.

omission is not critical to the waiver decision. Provided that defendant actually communicated with the deputy public defender, he could choose whether to consent or decline to be represented. As defendant concedes, there is nothing in "the record . . . showing that [he] never consulted with appointed counsel." Because defendant has not shown that the deputy public defendant acted without his approval, we find that he waived his right to self-representation.

## B. THE RIGHT TO BE PRESENT AT RESENTENCING

We also reject defendant's separate claim that he was erroneously deprived of his right to be present at the hearing. He makes this argument for the first time in his reply brief; and then he does so only conclusorily, asserting that section 977, subdivision (a)—which allows a misdemeanor defendant to appear by counsel—does not apply because "this case was not a misdemeanor before the court granted the Proposition 47 motion." Defendant has forfeited the issue by raising it in an untimely and superficial fashion. (*Sourcecorp, Inc. v. Shill* (2012) 206 Cal.App.4th 1054, 1062, fn. 7 ["This cursory *and* belated invocation of a different argument forfeits our plenary consideration of it"].)

The argument also fails on the merits. When a defendant files a petition to recall a sentence under Proposition 47, the trial court must first decide the defendant's eligibility for the requested relief (i.e., whether the crime qualifies for reduction to a misdemeanor and whether the defendant previously has suffered any disqualifying convictions). (§ 1170.18, subds. (a), (b), (i).) This decision typically can be made without a hearing because eligibility is often obvious on the incontrovertible written record. (*People v. Perkins*, *supra*, 244 Cal.App.4th at p. 137 ["We read the statute to fairly imply that in the normal case the superior court will rule on the basis of the petition and any supporting documentation"].) Indeed, it is well established that a represented defendant has no constitutional or statutory right to be present to address purely legal questions or where his or her "presence would not contribute to the fairness of the proceeding." (*People v. Perry* (2006) 38 Cal.4th 302, 312 ["a defendant may ordinarily be excluded from conferences on questions of law, even if those questions are critical to the outcome of the case"]; see, e.g., *People v. Lopez* (2013) 56 Cal.4th 1028, 1052 [no right to be present

11

during questioning of prospective jurors in chambers and sidebar conferences]; *People v. Butler* (2009) 46 Cal.4th 847, 865 [no right to be present during discussion about jury instructions].[9]

In this case, the trial court conducted this unopposed eligibility review in open court only as a prelude to resentencing. In fact, the hearing on eligibility consisted entirely of asking the prosecutor whether he agreed with the court that defendant was entitled to the relief. When the prosecutor agreed, the court granted the petition and then turned to the issue of resentencing. It is apparent that the court already had screened for eligibility on the written record and did no more than place the unopposed results of that screening on the record. Defendant was not entitled to be present for this part of the uncontested eligibility hearing. (See fn. 9, *ante*, and accompanying text; cf. *People v. Oehmigen* (2014) 232 Cal.App.4th 1, 7 [no due process right to a hearing under Proposition 36 to determine eligibility when no facts are in dispute].)

Once the court granted defendant's petition to recall the sentence on the felony conviction, the crimes became misdemeanors by operation of law for purposes of resentencing. (§ 1170.18, subd. (k) ["[a]ny felony conviction that is recalled and resentenced under subdivision (b) or designated as a misdemeanor under subdivision (g) shall be considered a misdemeanor for all purposes," except for the firearm restriction].) The resentencing therefore had to comply with section 1193, subdivision (b), which

---

[9]     The right to be present has constitutional and statutory origins. (*People v. Cole* (2004) 33 Cal.4th 1158, 1231.) The Sixth Amendment affords a defendant the right to be present when necessary to effectively cross-examine witnesses. (*Ibid*.) The Fourteenth Amendment's due process clause provides a defendant the right to be present at all critical stages where his or her presence could contribute to the fairness of the proceedings. (*Ibid*.) Article I, section 15 of the California Constitution secures a defendant's right to be present at those proceedings that bear a "'''''''"reasonably substantial relation to the fullness of his opportunity to defend against the charge."''''''' (*Ibid*.) The statutory right to be present, found in sections 977 and 1043, is coextensive with the California constitutional right set forth in article I, section 15. (*Ibid*.)

provides: "If the conviction be of a misdemeanor, judgment may be pronounced against the defendant in his absence."

Pronouncing judgment against a defendant in absentia, however, can only be done with a valid waiver, because a criminal defendant has a constitutional and statutory right to be present at sentencing. (*People v. Cole*, *supra*, 33 Cal.4th at p. 1231 [constitutional right to be present at all critical stages]; see *People v. Doolin* (2009) 45 Cal.4th 390, 453 [sentencing is a critical stage]; *People v. Rouse*, *supra*, ___ Cal.App.4th at p. ___ [2016 WL 772546 at p. 5] [resentencing is a critical stage]; accord, *People v. Wilen* (2008) 165 Cal.App.4th 270, 287 [constitutional right to be present at sentencing]; see also § 977, subd. (a) [explaining presence requirement and waiver procedures].) Where, as here, a defendant is resentenced on a misdemeanor conviction only, the defendant is permitted to waive his constitutional right to be personally present and to exercise his "statutory right [under section 977, subdivision (a)] to appear through counsel." (*Olney v. Municipal Court*, *supra*, 133 Cal.App.3d at p. 462 [finding that a court's "'blanket policy'" requiring a misdemeanor defendant's appearance violated his statutory right].) Of course, the absent defendant must authorize the acts of his counsel. "However, the court can rely upon the representations of defense counsel that the accused was knowingly absent from the proceedings." (*Id*. at p. 461, fn. 5.) This is all the trial court did here.

## DISPOSITION

The order is affirmed.


BLUMENFELD, J.[*]


I concur:


PERLUSS, P. J.

---

[*] Judge of the Los Angeles Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

13

SEGAL, J., Dissenting

In my view, the majority arrives at the wrong answer because it asks the wrong question. The question is not whether a trial court may rely on an attorney's representation that his or her client has waived the right of self-representation or the right to be present at sentencing. I agree with the majority that a trial court may do so. But in this case, the deputy public defender never made those representations. In fact, there is no evidence in the record that Fedalizo expressly or impliedly waived his right to represent himself or his right to be present at the resentencing hearing. There is not even evidence the court ever appointed the public defender to represent Fedalizo in connection with his petition for rehearing under Proposition 47. The deputy public defender never said that he was representing Fedalizo, that he was authorized to appear on behalf of Fedalizo, or that he had ever communicated with Fedalizo. Without such evidence, the question is whether an attorney may waive a defendant's right to represent himself and be present at sentencing by merely standing in for him. In my view, when the trial court conducted the resentencing hearing in Fedalizo's absence, the court violated his constitutional rights to represent himself and to be present at the hearing. Therefore, I respectfully dissent.

A.     *The Trial Court Violated Fedalizo's Right To Represent Himself*

Under the Sixth Amendment of the United States Constitution, a criminal defendant has a "constitutional right to conduct his own defense." (*Faretta v. California* (1975) 422 U.S. 806, 836.) The right to self-representation is independent of the right to counsel. (*Id.* at p. 807.)

It is undisputed that Fedalizo represented himself when he negotiated a plea agreement with the prosecutor, when he was convicted, and when the trial court originally sentenced him. The evidence is also undisputed that Fedalizo represented himself when he filed the petition for resentencing. And the evidence is undisputed that Fedalizo represented himself when, after the court ruled on his petition and resentenced

him in his absence, he filed a motion to modify his sentence from consecutive to concurrent terms, which this court deemed a notice of appeal. In addition, there is no evidence that the court appointed the public defender to represent Fedalizo in connection with this petition. The public defender did not file the petition for resentencing, Fedalizo did. The public defender did not file any papers in this proceeding, only Fedalizo did. Fedalizo represented himself from beginning to end, from conviction to sentencing to petitioning to moving for reconsideration.

The majority concludes that Fedalizo waived his right to (continue to) represent himself. It is true that, once a defendant has exercised his or her right to self-representation, the defendant can waive that right either expressly or by conduct. (*People v. Trujeque* (2015) 61 Cal.4th 227, 262-263; see *McKaskle v. Wiggins* (1984) 465 U.S. 168, 182-183; *People v. Stanley* (2006) 39 Cal.4th 913, 919.) Such a waiver of a defendant's constitutional right of self-representation, however, "should be voluntary, knowing, and intelligent." (*People v. Trujeque*, *supra*, 61 Cal.4th at pp. 262-263.)

For example, a defendant may waive the right of self-representation by asking an attorney to participate in the trial. (See *McKaskle v. Wiggins*, *supra*, 465 U.S. at p. 183 ["[o]nce a *pro se* defendant invites or agrees to any substantial participation by counsel, subsequent appearances by counsel must be presumed to be with the defendant's acquiescence, at least until the defendant expressly and unambiguously renews his request that standby counsel be silenced"]; *People v. Rudd* (1998) 63 Cal.App.4th 620, 631 ["the Sixth Amendment self-representation right does not exist when a defendant prior to or during trial acquiesces in the assignment or participation of counsel in the defense"]; *U.S. v. Swinney* (8th Cir. 1992) 970 F.2d 494, 498 [a "defendant remains free . . . to elevate standby counsel to a lead counsel role, thereby waiving the defendant's *Faretta* rights"].) Or the defendant may change his or her mind about or vacillate on whether to represent himself or herself. (See, e.g., *Sandoval v. Calderon* (9th Cir. 2000) 241 F.3d 765, 775 [circumstances may "indicate that the defendant has changed his or her mind about self-representation"]; *Munkus v. Furlong* (10th Cir. 1999) 170 F.3d 980, 984 ["a waiver or a termination of the right to self-representation may occur . . . from the

2

defendant's equivocation"]; *Brown v. Wainwright* (5th Cir. 1982) 665 F.2d 607, 611 ["[e]ven if a defendant [asks] to represent himself . . . the right may be waived through defendant's subsequent conduct indicating he is vacillating on the issue or has abandoned his request altogether"]; see also *U.S. v. Jackson* (6th Cir. 2008) 304 Fed.Appx. 424, 429 [a "change of heart" and "acceptance of newly appointed counsel" can constitute "an implied waiver of the right of self-representation"].)  There is no evidence, however, of any acquiescence or vacillation here.

So, then, where is the waiver, or at least facts from which a waiver could be implied?  Not in the clerk's transcript:  All of the documents filed in connection with the petition were filed by Fedalizo.  Not in the reporter's transcript:  Fedalizo was not present when the court conducted the resentencing hearing, and the deputy public defender never said he represented Fedalizo, let alone that Fedalizo was waiving his right to represent, or was no longer representing, himself.[1]  My review of the record discloses no conduct by Fedalizo from which a waiver may be inferred.  To the contrary, the only evidence of Fedalizo's conduct is his filing of the petition for resentencing and his motion to modify his sentence, both of which he filed as his own lawyer.  (See *U.S. v. Kerr* (2d Cir. 2014) 752 F.3d 206, 219 ["no indication that [the defendant] waived his right to self-representation during the post-plea period" where the defendant "made numerous *pro se* filings"].)

---

[1]     Citing *People v. Sanghera* (2006) 139 Cal.App.4th 1567 and *People v. Sullivan* (2007) 151 Cal.App.4th 524, the majority states, "we cannot presume that counsel neglected to obtain defendant's consent before proceeding as his attorney." (Maj. opn., p. 6.)  Neither case supports the majority's converse presumption:  when an attorney stands in for a self-represented litigant, the court may presume the litigant has impliedly waived the right to self-representation. *Sanghera* was a substantial evidence case that did not involve the right to counsel or the right to self-representation. (*Sanghera*, *supra*, at p. 1573.)  In *Sullivan* the defendant expressly waived his right to counsel and proceeded to represent himself, and then successfully argued on appeal his waiver was invalid because the trial court had failed to properly admonish him about the disadvantages of self-representation, although the court ultimately concluded the error was harmless. (*Sullivan, supra*, at pp. 548-553.)

3

In finding an implied waiver of the constitutional right of self-representation that Fedalizo so clearly and consistently exercised, the majority relies on facts I am unable to locate in the record.  For example, the majority states that the court "appointed the public defender's office" to represent Fedalizo.  (Maj. opn., p. 11.)  Not that I can find.  There is no indication in the record that the court appointed counsel for Fedalizo.  The majority also states, "After noting that the deputy public defender had 'waiv[ed] [his] client's appearance,' the trial court resentenced defendant."  (Maj. opn., p. 8, fn. 5.)  I do not read the record that way.  It was only after the court had resentenced Fedalizo and turned to a different case, case No. KA108474, that the court asked if, with respect to the second case, Fedalizo was waiving his appearance.  Here is the transcript of the hearing on which the majority bases its determination that Fedalizo waived his rights to represent himself and to be present at sentencing:

"The Court:  Baltazar Fedalizo.  410 on the calendar.  Mr. Santos [the deputy public defender] representing.  In this matter petition again for re-sentencing.  My understanding it applies in this matter, Mr. Urgo [the deputy district attorney]?

"Mr. Urgo:  Yes.

"The Court:  All right.  Granting the petition.  Making all counts a misdemeanor.

"The Clerk:  Count[s] 6 and 7 are already misdemeanors.

"The Court:  Count[s] 6 and 7 were already misdemeanors.  So it would be 364.  All counts running concurrent.

"Mr. Urgo:  I think he has already been sentenced to the three years.

"The Clerk:  He has another case.  412.

"The Court:  So he's been sentenced?

"Mr. Urgo:  He got three years.  So the court can give him three years on this to run concurrent and not change his sentence.

"The Court:  Okay.  So waive formal arraignment for judgment then?

"Mr. Santos:  So waived.  No legal cause for delay.

"The Court:  All right.  And waiving your client's appearance.  Sentencing pursuant to Prop. 47.  Ordering 364 days in the county jail as to Count 1.  Consecutive to

4

that, 364 days in county jail on Count 2. Consecutive to that, 364 days on Count 3. So that is three years. Then as to Count 4, 364 to run concurrent. Count 5, 364 to run concurrent. Count 6, 180 days to run concurrent. And Count 7, 364 to run concurrent. All other orders are full force and effect. As to case 412 on the calendar, that's the same defendant, second case. Mr. Santos representing. Waiving his appearance on that matter?

"Mr. Santos: So waived.

"The Court: Alright. Mr. Urgo for the People. This is possession of a counterfeit seal. Prop. 47 does not apply to that count. Do you wish to be heard, Mr. Santos, any further?

"Mr. Santos: Submitted.

"The Court: Alright. The petition is denied as that charge does not apply to the new Prop. 47. And all previous orders full force and effect in that matter."

From the court's statement, "waiving your client's appearance," the majority concludes that "the trial court noted for the record that the deputy public defender had waived defendant's appearance." (Maj. opn., p. 3.) I do not think that is a fair characterization of what happened. After resentencing Fedalizo on his successful Proposition 47 petition, the court moved on to Fedalizo's other case (the case for which Fedalizo was ineligible for resentencing), and only then did the court ask the deputy public defender whether Fedalizo waived his appearance "on that matter," to which the deputy public defender replied, "So waived." I do not believe that this waiver, even assuming it was valid, applies retroactively to Fedalizo's resentencing in case No. KA103656, which the court had already heard. Nor do I believe that the court may waive Fedalizo's appearance sua sponte, which is what apparently occurred in case No. KA103656.

The majority points to Fedalizo's post-hearing motion to modify his sentence as further evidence that he "at least acquiesced" in the deputy public defender's "authority to appear for him and waive his presence," and states that "[a]ll the evidence . . . points in one direction . . . ." (Maj. opn., p. 7.) I agree. The evidence does point in one direction:

5

the opposite one. The fact that the very next filing after the hearing on Fedalizo's petition for resentencing was a motion by Fedalizo representing himself, not by the public defender, confirms what Fedalizo has maintained all along: he was representing himself. If Fedalizo had actually retained the public defender's office to represent him in connection with his petition for resentencing, the motion to modify and request for the imposition of concurrent sentences would have been filed by the public defender, not Fedalizo. By filing the motion and making an argument the deputy public defender did not make at the hearing, Fedalizo was not "acquiescing" in the representation, he was disavowing the representation and continuing to represent himself. Fedalizo's actions spoke louder than the deputy public defender's words (or, in this case, silence).

The true basis of the majority's implied waiver finding appears to be the concern that requiring a court to ask whether an absent, self-represented defendant has waived the right to represent himself when an attorney stands in at a sentencing hearing will result in a loss of efficiency.[2] The majority states that upholding Fedalizo's right to continue representing himself "would cause serious and needless disruption to the court system," "would be especially disruptive in misdemeanor courts," would "disturb the normal operations of the court," and would not be "productive." (Maj. opn., pp. 9, 10.) Increasing efficiency and expediting the management of court calendars are important goals. But they should not take precedence over constitutional rights. (See *In re Kevin G.* (1985) 40 Cal.3d 644, 648 ["[i]mpairment of constitutional rights . . . will not be suffered in return for efficiency"]; *U.S. v. Vea-Gonzales* (9th Cir. 1993) 999 F.2d 1326, 1334 ["[i]f enforcement of constitutional rights sometimes undermines efficiency, it is the price we all pay for having a constitution," overruled on other grounds by *U.S. v. Jimenez* (9th Cir. 2008) 533 F.3d 1110, 1113-1114]; *Bethea v. Crouse* (10th Cir. 1969) 417 F.2d 504, 509 ["we 'must not play fast and loose with basic constitutional rights in the interest

---

[2]    Indeed, the majority's conclusion is based on a double implication: (1) Fedalizo can impliedly waive his right of self-representation by a statement or conduct, and (2) the only evidence of a statement or conduct by Fedalizo is an "implied representation[ ]" by the attorney. (Maj. opn., p. 9.)

6

of administrative efficiency'"]; *Lavan v. City of Los Angeles* (C.D. Cal. 2011) 797 F.Supp.2d 1005, 1018 ["often efficiency must take a backseat to constitutionally protected interests"]; *U.S. v. Cataldo* (S.D.N.Y. 1985) 625 F.Supp. 1255, 1257 ["preservation of a defendant's constitutional rights must take precedence over concerns for efficiency and conservation of judicial resources"].) Allowing defendants to represent themselves is often disruptive and unproductive, and self-represented defendants rarely do better on their own than they would with counsel. (See *Martinez v. Court of App. of Cal.* (2000) 528 U.S. 152, 161 ["[o]ur experience has taught us that 'a pro se defense is usually a bad defense, particularly when compared to a defense provided by an experienced criminal defense attorney'"]; *Faretta v. California, supra*, 422 U.S. at p. 834 ["in most criminal prosecutions defendants could better defend with counsel's guidance than by their own unskilled efforts"]; *People v. Rivers* (1993) 20 Cal.App.4th 1040, 1051 ["a defendant who represents himself virtually never improves his situation or achieves a better result than would trained counsel"].) Yet defendants have the constitutional right to represent themselves, misguided or detrimental as it may be for them to exercise that right, and we are obligated to protect and enforce that right. I would do so here, despite the possibility of adverse economic consequences.

The cases on which the majority relies all involved very different situations. In *McKaskle v. Wiggins, supra*, 465 U.S. 168, the defendant who impliedly waived his right of self-representation was present in court with standby counsel, consulted with standby counsel during the trial, and "expressly agreed to allow" standby counsel to examine a witness and make an opening statement. (*Id.* at p. 172.) In *People v. D'Arcy* (2010) 48 Cal.4th 257 the defendant was present in court, withdrew his previously-filed motion to represent himself, and "confirm[ed] that he wanted to be represented by" counsel. (*Id.* at p. 285.)[3] And in *People v. Rudd, supra*, 63 Cal.App.4th 620, the defendant was present

---

[3]    The Supreme Court in *D'Arcy* also stated, albeit in dicta, that a waiver of the constitutional right of self-representation "'not only must be voluntary but must be knowing, intelligent [and] done with sufficient awareness of the relevant circumstances and likely consequences.'" (*People v. D'Arcy, supra*, 48 Cal.4th at p. 284.)

in court when the court revoked his right to represent himself because he was not ready for trial, and neither the "defendant nor his counsel objected to the order revoking the pro se status." (*Id.* at p. 625.) There are no such facts here, and, as noted, Fedalizo was not in court when his right of self-representation was violated.

Citing several non-criminal cases, the majority states that "well-settled law" "requires us to draw a reasonable inference that [Fedalizo] authorized the deputy public defender to act on his behalf and waive his presence." (Maj. opn., pp. 7-8.) There is no such well-settled law, and the cases cited by the majority say no such thing. For example, in *Tsakos Shipping & Trading, S.A. v. Juniper Garden Town Homes, Ltd.* (1993) 12 Cal.App.4th 74, a civil case, there was no question the attorney had appeared for the partnership client in New York litigation: the attorney "answered, counterclaimed, and cross-claimed" on behalf of the client and appeared for it "throughout the proceedings." (*Id.* at pp. 83, 95.) The court in *Tsakos* nevertheless refused to enforce the resulting New York judgment because the attorney had a disqualifying conflict of interest. (*Id.* at pp. 95-97.) Hardly authority for a well-established rule that we must infer a defendant authorized a deputy public defender to act on his behalf in the absence of any evidence that he did. Indeed, in civil cases, like *Tsakos*, a trial court in California would not allow an attorney to appear at a hearing for a litigant who had been representing himself or herself in the case without a properly executed, filed written substitution of attorney or notice of limited scope representation.

*Sarracino v. Superior Court* (1974) 13 Cal.3d 1, a conservatorship case, involved the authority of a properly court-appointed guardian ad litem. The Supreme Court held that, in the absence of a "factual showing of any irregularity in the guardian ad litem's appointment or of any deficiency in her authority to represent [the conservatee], her authority is presumed." (*Id.* at p. 13.) The Supreme Court explained that "[t]he guardian ad litem, like the attorney, is both the incompetent's representative of record and a representative of the court," and that "[a]n attorney's authority to represent his purported client is presumed in the absence of a strong factual showing to the contrary." (*Ibid.*) I do not read the opinion so broadly as to create a presumption that an attorney, who has

8

not been appointed, nevertheless has authority to represent a self-represented criminal defendant.[4]

Finally, because there is no issue regarding the timeliness of Fedalizo's request to represent himself, the denial of his right to represent himself is not subject to harmless error analysis. (*McKaskle v. Wiggins*, *supra*, 465 U.S. at p. 177, fn. 8; *U.S. v. Farias* (9th Cir. 2010) 618 F.3d 1049, 1055; see *People v. Thurston* (2016) 244 Cal.App.4th 644, 673-674; *People v. Doss* (2014) 230 Cal.App.4th 46, 55.)

B.   *The Trial Court Violated Fedalizo's Right To Be Present at Resentencing*

A defendant has the right to be present at all critical stages of a criminal proceeding. (*People v. Cunningham* (2015) 61 Cal.4th 609, 633.) "Sentencing is a critical stage in the criminal process within the meaning of the Sixth Amendment." (*People v. Rouse* (2016) ___ Cal.App.4th ___, ___, 2016 WL 772546, at p. 3; see *People v. McGraw* (1981) 119 Cal.App.3d 582, 594, fn. 1.) A defendant has federal and state constitutional rights to be present at sentencing and resentencing, including resentencing under Penal Code section 1170.126, subdivision (f). (*People v. Hines* (1997) 15 Cal.4th 997, 1038-1039; *People v. Tubbs* (2014) 230 Cal.App.4th 578, 588; *People v. Superior Court* (2013) 215 Cal.App.4th 1279, 1299.) "As a matter of both federal and state constitutional law, however, a defendant may validly waive his or her right to be present

---

[4]   *In re Helen W.* (2007) 150 Cal.App.4th 71, a dependency case, is similarly inapplicable. There was no dispute in that case that the attorney represented the mother in the juvenile court. After the juvenile court terminated her parental rights, "[t]he mother's trial counsel signed and filed a timely notice of appeal." (*Id.* at p. 77.) The court explained: "Following our administrative practice in juvenile dependency cases, this court issued an order questioning whether the mother had authorized the appeal and invited a response. A response was filed by Appellate Defenders, Inc. (ADI), the local appellate project, urging us to change our practice and accept a notice of appeal in a dependency case that is signed by counsel without questioning whether the appeal was authorized by the client. As explained below, we agree and have done so." (*Ibid.*) The reference to the presumption in the court's opinion, cited by the majority, related to whether an attorney of record in the juvenile court had authority to file a notice of appeal.

9

during a critical stage of the trial, provided the waiver is knowing, intelligent, and voluntary." (*People v. Cunningham*, *supra*, 61 Cal.4th at p. 633; *People v. Carrasco* (2014) 59 Cal.4th 924, 958-959.) A criminal defendant also has a statutory right to be present at sentencing. (See Pen. Code, § 977, subd. (b); *People v. Blacksher* (2011) 52 Cal.4th 769, 798-799.) Fedalizo was not present when the trial court resentenced him, thus violating his constitutional and statutory rights.

The majority concludes that there were no such violations because the deputy public defender was authorized to inform the court that Fedalizo had waived his right to be present at resentencing. (Maj. opn., pp. 7, 11.) As noted, however, there is no evidence, from either Fedalizo or the deputy public defender, that Fedalizo authorized the attorney to waive his right to be present for resentencing. Although the court in the case cited by the majority did state in a footnote that "the court can rely upon the representations of defense counsel that the accused was knowingly absent from the proceedings" (*Olney v. Municipal Court* (1982) 133 Cal.App.3d 455, 461, fn. 5), the court in that case also stated in the text of the opinion that "the court must be confident that the acts of counsel are authorized by the absent defendant" (*id.* at p. 461), and that "[a] defendant who absents himself must do so with full knowledge of the pendency of the criminal proceedings, as the waiver of the right to be present must be a knowing and intelligent one." (*Id.* at pp. 460-461.) I can find no evidence in the record that Fedalizo absented himself with any, let alone full, knowledge of the resentencing proceedings, that Fedalizo made a knowing and intelligent waiver of his right to be present at those proceedings, or that there was any basis for concluding with confidence that Fedalizo authorized the deputy public defender to appear for him. (Cf. *People v. Rouse*, *supra*, ___ Cal.App.4th at pp. ___, ___, 2016 WL 772546, at pp. 2, 5 ["defendant waived his right to personally appear at the resentencing hearing" by stating in his declaration accompanying his petition, "'defendant hereby waives his right to be present for sentencing'"].)

Finally, I cannot conclude on this record that the error was harmless. Because the right to be present at sentencing is a federal constitutional right we apply the "harmless

10

beyond a reasonable doubt" standard in *Chapman v. California* (1967) 386 U.S. 18, 24. (See *People v. Davis* (2005) 36 Cal.4th 510, 532 ["[u]nder the federal Constitution, error pertaining to a defendant's presence is evaluated under the harmless beyond a reasonable doubt standard set forth in *Chapman*"]; accord, *People v. Robertson* (1989) 48 Cal.3d 18, 62; *People v. El* (2002) 102 Cal.App.4th 1047, 1050.)  The statutory error under Penal Code section 977 "is state law error only, and therefore is reversible only if '"it is reasonably probable that a result more favorable to the appealing party would have been reached in the absence of error"'" under *People v. Watson* (1956) 46 Cal.2d 818, 836. (*People v. Davis*, *supra*, at pp. 532-533.)  Fedalizo's original sentence was three years on one count, plus concurrent terms on several other counts.  (Maj. opn., p. 3.)  When the court granted Fedalizo's Proposition 47 petition, the court was able to keep Fedalizo's sentence at three years by converting some of the concurrent sentences to consecutive sentences.  Fedalizo never had an opportunity to argue for concurrent sentences, the deputy public defender did not make any argument for concurrent sentences, and the trial court did not state any reasons for imposing consecutive rather than concurrent sentences.[5]  (See Cal. Rules of Court, rule 4.406(b)(5) [sentencing judge must state reasons for imposing consecutive sentences]; *People v. Sanchez* (1994) 23 Cal.App.4th 1680, 1684 [trial court must state reasons for imposing consecutive rather than concurrent sentences].)[6]  The People's argument that "there is no reasonable probability that the trial court would have granted [Fedalizo's] request" for concurrent terms ignores the fact that the trial court in fact imposed concurrent terms at the original sentencing hearing.  I

---

[5]     The majority states that this occurred "without objection" (maj. opn., p. 3), but that was because Fedalizo was not there to make an objection.

[6]     Although a defendant may forfeit an argument that the trial court failed to state reasons for imposing consecutive sentences by failing to raise the issue in the trial court (*People v. Scott* (1994) 9 Cal.4th 331, 353), Fedalizo was not at the resentencing hearing to object, and he objected to the imposition of consecutive sentences when he learned of it after the hearing.

believe Fedalizo should have had the opportunity to be present and to ask the court to sentence him to concurrent terms, as the court had before.


SEGAL, J.